James E. VANN, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF FUNERAL DIRECTORS AND EMBALMERS, Respondent.**

No. 80–417.

District of Columbia Court of Appeals.

Argued Sept. 22, 1981.

Decided Jan. 7, 1982.

Charles Rosenbleet, Washington, D. C., for petitioner.

Philip T. Van Zile, III, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before HARRIS, PRYOR and BELSON, Associate Judges.

BELSON, Associate Judge:

Petitioner seeks review of an order of the District of Columbia Board of Funeral Directors and Embalmers (the Board), suspending his undertaker's license for a peri-

od of 90 days. Petitioner asks that the Board's order be set aside on the grounds that: (1) the Board did not issue its decision within 90 days after the date the hearing was completed, and serve notice thereof upon petitioner or his attorney within an additional five days as prescribed by the regulations governing occupational and professional licensing boards, 5DD DCRR §§ 50.1 and 50.3; (2) the Board erred in denying petitioner's motion to disqualify Board members; and (3) the Board's decision was not supported by substantial evidence. We find petitioner's claims of error unpersuasive, and affirm.

Petitioner is a licensed undertaker in the District of Columbia. On August 13, 1979, the Board charged him with "failing to act in the interest and protection of the comfort and quiet of citizens" and "engaging in annoying and unseemly conduct in connection with performing or offering to perform undertaking services" in violation of D.C. Code 1973, § 47–2345(a), and 5N DCRR §§ 10.1 and 12.1(a), (c), and (d); and with "carrying out practices detrimental to public health and safety" in violation of D.C. Code 1973, § 47–2344a(d)(1), and 5DD DCRR § 10.1.

Prior to the hearing, petitioner filed a motion with the Board asking that the four active Board members be disqualified on the grounds that all of them, as undertakers, were in competition with him, and that two of them, members Tillman and Plummer, were personally biased against him.[1] The motion was denied.[2] On November 29, 1979, the Board began the hearing on the charges against petitioner. The case was taken under advisement on December 14, 1979. On April 14, 1980, the Board served upon petitioner its finding that petitioner had violated the above-cited statutes and regulations and its decision suspending his license for a period of three months.

Our review in this case is governed by D.C.Code 1973, § 1–1510, which provides for judicial review of the actions of administrative agencies such as the Board. In accordance with the provisions of § 1–1510(3), we will not set aside any finding, conclusion or action of the Board unless it is found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; in excess of the Board's powers; or in violation of applicable procedure, or unsupported by substantial evidence in the record.

## I.

Proceedings before the Board are governed by 5DD DCRR. The applicable regulations provide that the Board shall render its decision "as soon as practicable, but not later than ninety days after the date the hearing is completed," 5DD DCRR § 50.1, and that the Board shall, within five days after the decision is rendered, serve a copy thereof upon the person concerned, or his attorney. 5DD DCRR § 50.3. It is not contested that the Board took petitioner's case under advisement on December 14, 1979, and did not serve petitioner with a copy of its decision until approximately 122 days later.[3] Petitioner contends that the decision should be set aside because it was rendered more than 90 days after the hearing was completed.[4] We cannot agree.

In *JBG Properties, Inc. v. District of Columbia Office of Human Rights*, D.C.App., 364 A.2d 1183 (1976), we held that the provisions of the District of Columbia Human Rights Law directing that the Office of Human Rights take action with respect to

---

1. The Board is composed of five members, one of whom represents the Department of Public Health and is an ex officio member. D.C.Code 1973, § 47–2344a(d)(2).

2. Board's Order dated November 28, 1979.

3. On June 24, 1980, petitioner filed a Motion for Stay of the Board's Order Pending Review with this court. The motion was granted on June 27, 1980.

4. There is no assertion here that the Board delayed its decision in bad faith. The Board stated, and petitioner does not dispute, that during the period between the close of the hearing and the issuance of the Board's decision, the Board chairman died and another member was hospitalized.

complaints filed with it within a specified time period were directory, and that the Office's failure to act within that time period did not necessarily require that the complaint be dismissed.

In reaching our holding in *JBG Properties, Inc.*, we noted that statutory provisions concerning the performance of duties by public officers generally are considered directory so that the interests of private parties and the public might not suffer due to the official's failure to act promptly. In order to protect all the interests involved, we adopted a balancing test to determine whether any prejudice to a party caused by agency delay is outweighed by the interests of another party or the public in allowing the agency to act after the statutory time period has elapsed.[5] We held also that the agency bears the burden of demonstrating that its delay did not substantially prejudice the complaining party.[6]

Application of the balancing test set forth in *JBG Properties, Inc.*, to the facts of the present case leads to the conclusion that the Board's decision should not be set aside. Petitioner experienced no prejudice as a result of the Board's failure to act within 90 days. This is not a situation in which a petitioner was seeking to obtain a license from the Board and was prevented from practicing his profession by the Board's failure to act promptly. Under those circum-

stances, prejudice might occur.[7] Here, petitioner experienced only delay in having his license suspended. As petitioner's counsel conceded, the Board's delay did not impair the fairness of the proceedings or the correctness of the action taken. In view of the lack of prejudice to petitioner and the public interest in resolution of the charges against petitioner,[8] we hold that the Board's failure to act within 90 days does not render its decision invalid.

## II.

Petitioner's second claim of error arises out of the Board's denial of his motion to disqualify board members. The Board is composed of five members, one of whom represents the Department of Public Health and serves in an ex officio capacity. In his motion, petitioner asked that the four active Board members be disqualified from hearing his case. Petitioner asserted that those members had a pecuniary interest in the outcome of the proceedings as competitors of petitioner, and that members Tillman and Plummer were in addition personally biased against him. The motion was denied by the Board.

▮ With respect to the composition of the Board, D.C.Code 1973, § 47–2344a(d)(2), provides that:

[The Mayor, and the Council of the District of Columbia] . . . are hereby authorized . . .

**5.** Our holding on this issue is in accord with the law of many other jurisdictions. *See, e.g., Taylor v. Department of Transportation*, 260 N.W.2d 521 (Iowa 1977); *Prince George's County v. McBride*, 268 Md. 522, 302 A.2d 620 (1973); *Broadway Realty, Inc. v. New York State Division of Human Rights*, 43 A.D.2d 754, 349 N.Y.S.2d 1003 (1973); *Spalding v. Price*, 210 Kan. 337, 502 P.2d 713 (1972); *Wyoming State Treasurer v. City of Casper*, 551 P.2d 687 (Wyo.1976); *Canyon Public Service District v. Tasa Coal Company*, 156 W.Va. 606, 195 S.E.2d 647 (1973). *See also* 2A C.D. Sands & A. Sutherland, Statutes and Statutory Construction § 57.19 (4th ed. 1973), and cases collected at n.3 446–447 and Supp. 1981 at 84, § 57–19.

Petitioner directs our attention to cases in which the Florida appellate courts have invalidated agency action taken beyond the time period specified by statute. Our reading of the cases indicates that Florida, like the majority of jurisdictions, has not adopted a per se rule

invalidating delayed agency action. Rather, agency action will be set aside only upon a showing that the fairness of proceedings or the correctness of action taken has been impaired by delay. *See G&B of Jacksonville, Inc. v. State of Florida, Department of Business Regulation*, 362 So.2d 951 (Fla.App.1978); *Pinellas County v. Florida Public Employees Relations Commission*, 379 So.2d 985 (Fla.App.1980).

**6.** *JBG Properties, Inc., supra* at 1186, 1187.

**7.** *See Financial Marketing Group, Inc. v. State Department of Banking and Finance Division of Securities*, 352 So.2d 524 (Fla.App.1977).

**8.** Petitioner does not ask that his case be remanded to the Board for further proceedings. He thus at least impliedly asks that he not be subject to further proceedings concerning the same charges should the Board's order be set aside.

(2) [t]o appoint a committee of five persons of good moral character, two of whom shall have been actually and continuously engaged in discharging the duties of an undertaker or embalmer in the District of Columbia for at least five years next preceding their appointment and the Director of Public Health, or a member of the personnel of the Health Department designated by said Director of Public Health, who shall serve ex officio as a member of said committee ....

Petitioner claims that the statute provides that only two members of the Board may be funeral directors or embalmers. We note first that even if petitioner were correct in his interpretation, he would have no grounds for a claim that all of the Board members should be disqualified, because the statute clearly provides for at least two undertakers or embalmers. Further, we do not view § 47–2344a(d)(2) as limiting to two the number of undertakers or embalmers on the Board.

Our reading of statutes creating boards for occupational or professional licensure in the District of Columbia reveals that in some instances the legislature has enacted specific provisions concerning the number and/or qualifications of board members, while in other instances it has enacted no such provisions. The legislative provisions concerning member qualifications include residence and character requirements, as well as requirements as to the number of board members who must be licensed professionals.[9] In at least one instance the legislature specifically has restricted the number of board members who may possess certain characteristics.[10] We conclude, therefore, that the legislature made express provisions concerning the qualifications of board members when it wished to do so, and that the absence of such express provisions indicates a legislative indifference to the qualifications of the members not provided for.

As to the Board of Funeral Directors and Embalmers, D.C.Code 1973, § 47–2344a(d)(2), provides only that the Board be composed of five persons of good character, one of whom shall represent the Board of Public Health and two of whom shall be licensed professionals. In the absence of any specific language or other clear indication of legislative intent concerning the professional status of the remaining two members, we decline to infer an intent to restrict the membership of the Board to two licensed undertakers or embalmers.

■ In his motion, petitioner also asserted that two Board members should be disqualified because of personal bias. We have noted previously that the standard for disqualification of judicial officers is applicable to administrative officials who act in an adjudicative or quasi-judicial capacity. *See Morrison v. District of Columbia Board of Zoning Adjustment*, D.C.App., 422 A.2d

---

**9.** *See, e.g.,* D.C.Code 1973, § 2–607 (Board of Pharmacy: five licensed pharmacists practicing in the District of Columbia for five years); *id.,* § 2–701 (Board of Podiatry Examiners: four members, one representing the Director of Public Health and three podiatrists residing and practicing in the District of Columbia for five years); *id.,* § 2–1302 (Board of Cosmetology: three members, all professionals, over 25 years of age and United States citizens, none of whom is affiliated with a professional school, and no two of whom have graduated from the same school); *id.,* § 2–426 (Practical Nurses Examining Board: unspecified number of members, all practical or graduate nurses, with graduate nurses comprising the majority of members); *id.,* § 2–455 (Physical Therapists Examining Board: unspecified number of members, no qualifications; and *id.,* § 2–1210 (Box-

ing Commission: three members, one representing the Metropolitan Police Department, two with no professional qualifications, all residing in the District except that one may reside in the greater metropolitan area).

We note that several of the boards have been abolished and their functions transferred to another agency. We examine the language of the statutes creating the original professional licensing and examining boards for the sole purpose of interpreting the statutory language at issue in this case, and we therefore attach no significance to the fact that the boards have been abolished and their functions transferred subsequent to the enactment of the statute.

**10.** D.C.Code 1973, § 2–1302 (Board of Cosmetology).

347, 349 (1980).[11] A judicial officer must recuse himself whenever a claimant alleges facts which are legally sufficient to show personal bias.

In this jurisdiction we have adopted a three-point test of the legal sufficiency of a claim of personal bias:

1. The facts (alleged) must be material and stated with particularity.
2. The facts must be such that, if true, they would convince a reasonable man that a bias exists.
3. The facts must show the bias is personal, as opposed to judicial, in nature.

*In re Evans*, D.C.App., 411 A.2d 984, 994 (1980); *In re Bell*, D.C.App., 373 A.2d 232, 234 (1977).

The issue before us is whether the Board correctly applied the above test to the facts alleged by petitioner.[12] The sum of petitioner's allegations concerning member Tillman was a statement that Mr. Tillman eventually handled the funeral and burial arrangements in a case in which petitioner had been charged with attempting to solicit employment from relatives of the deceased. Petitioner presented no evidence of any contact between himself and member Tillman, nor did he state any reason why member Tillman would have been biased against him because of the incident. With respect to member Plummer, it was alleged that on two occasions during 1979, petitioner, after having been retained by relatives of the deceased, personally removed the bodies of deceased persons from Mr. Plummer's funeral home. Petitioner alleged no additional facts concerning the removal of the bodies, and, as with member Tillman, stated no reason why his actions would have resulted in the Board member's being biased against him.

We conclude that petitioner's statements were not legally sufficient to establish personal bias and thus to require disqualification of the Board members. The statements did not set forth facts with particularity. Such facts as were stated, standing alone, did not show bias. Further, they were insufficient to convince a reasonable man that bias existed. Thus, the Board did not err in denying petitioner's motion to disqualify Board members.[13]

## III.

■ The Board found that petitioner engaged in acts detrimental to public health and safety in violation of D.C.Code 1973, § 47–2344a(d)(1) [14] and 5N DCRR 10.1, and that petitioner engaged in annoying and unseemly conduct in performing or offering to perform undertaking services in violation of D.C.Code 1973, § 47–2345(a) [15], and 5N DCRR §§ 10.1 and 12.1.

11. The precise issue before the court in *Morrison* was whether the recusal of the Zoning Board Chairman could be revoked when the grounds for disqualification no longer existed. 422 A.2d at 350.

12. *The Board was required to accept the facts alleged by petitioner as true for the purpose of ruling on the motion. See In re Bell, supra,* at 234.

13. Since we find that petitioner's allegations of personal bias of Board members do not meet the test of legal sufficiency set forth in *Morrison*, we do not reach the issue whether petitioner was required to set forth his allegations in affidavit form, as is required in federal practice. *See* 5 U.S.C. § 556(b) (1976).

14. Section 47–2344a(d) provides:
[The Mayor, and the Council of the District of Columbia] with respect to promulgating and altering rules and regulations under paragraph (6), are hereby authorized:

(1) After notice and open hearing, to refuse to issue or renew or to suspend or revoke a license for fraud or misrepresentation in the application therefor, or for misconduct during an examination therefor, or for any act or practice detrimental to the public health or safety, including the act of removing a dead human body without the prior consent of a person who, under the law, is authorized to give such consent, or for violation of the laws and regulations of the District of Columbia relating to the removal or burial or disposal of dead human bodies or the provisions of this section or of the rules and regulations hereinafter authorized to be promulgated, or for conviction of a felony as shown by a certified copy of the record of the court of conviction.

15. Section 47–2345(a) provides:
[The Council of the District of Columbia] is further authorized and empowered to make any regulations that may be necessary in fur-

The Board concluded that petitioner engaged in acts detrimental to the public health and safety after finding that petitioner had on two occasions misrepresented to the family members of deceased persons that his funeral home was affiliated with the District of Columbia Medical Examiner's Office. We are satisfied that the record, which includes relevant testimony of employees of the Medical Examiner's Office, provides a sufficient basis for this finding.

With respect to the Board's ruling that petitioner engaged in annoying and unseemly conduct in violation of D.C.Code 1973, § 47–2345(a), and 5N DCRR §§ 10.1 and 12.1, petitioner objects first that his conduct was not prohibited by the statutes, and secondly that there is insufficient evidence upon which the Board could find that he had engaged in the conduct alleged.

5N DCRR § 10.1 was adopted pursuant to D.C.Code 1973, §§ 47–2344a and 47–2345, and provides for suspension or revocation of undertakers' licenses. 5N DCRR § 12.1 defines conduct prohibited by § 47–2345. Section 12.1 provides:

> Licensed undertakers and licensed apprentice undertakers, their employees, agents, servants, or other persons acting at their instance, bidding, control, or direction, shall not engage in annoying or unseemly conduct in connection with performing, or offering to perform, any undertaking service. For the purposes of this section, the term "annoying or unseemly conduct" shall include, but shall not be limited to, the following kinds of conduct:
>
> (a) Loitering by the licensee or any employee of the licensee, or any person acting on behalf of the licensee, in or

about a hospital, sanitarium, or other place containing a dead or dying individual, for the purpose of soliciting, the employment of the licensee's services.

> (b) Offering or giving any gratuity or payment, either in money or property, to any hospital, sanitarium, or morgue employee for information concerning any dead or dying individual.
>
> (c) Requesting the representative of the deceased to change undertakers.
>
> (d) Engaging in a dispute with another undertaker or his employee for the possession of a body. In this connection, whenever any undertakers have differences of opinion concerning their legal right to take possession of a body, they shall refer the matter to the chairman of the Committee for a decision . . . .

Petitioner argues that the essence of the charges against him is that he solicited employment from relatives and friends of deceased persons and that since the only form of solicitation expressly prohibited by the regulations is that involving loitering in a place containing dead or dying individuals [16], all other forms of solicitation are permitted. We reject petitioner's contention. The language of the regulation is clear that the conduct proscribed by § 12.1 "shall include, but shall not be limited to" the conduct specified in subsections (a) through (d). Petitioner was charged with "annoying and unseemly conduct in connection with performing or offering to perform any undertaking services." There was ample evidence from which the Board could have found that petitioner had engaged in conduct that by any reasonable standard must be regarded as "annoying and unseemly" under the circumstances.[17]

therance of the purpose of this chapter and chapter 21 of this title and the [Mayor] is further authorized and empowered to suspend or revoke any license issued hereunder when, in his judgment, such is deemed desirable in the interest of public decency or the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia, or for any other reason he may deem sufficient.

16. 5N DCRR § 12.1(a).

17. To give one example, the Board received evidence, including the testimony of the complaining witness, that an employee of petitioner approached her within hours after the witness had learned of her mother's death, and attempted to persuade her to retain petitioner's funeral home. When the witness asked who had referred the funeral home, the employee stated that the witness's father had done so. At that time, the witness's father had been dead for seven years. [5N DCRR § 12.2 pro-

While the Board had only to find that petitioner's conduct contravened the general prohibition against "annoying and unseemly conduct . . ." in order to find him in violation of § 12.1 of the Regulations, and it was not necessary that it find that he violated any specific subsection of that regulation, we note that in at least one instance petitioner was found to have engaged in conduct which violated a specific subsection. Section 12.1(d) prohibits an undertaker from engaging in a dispute with another undertaker or his employee for the possession of a body. The Board had before it evidence that petitioner engaged in a dispute with a Virginia funeral home over the possession of a body removed from a hospital in Virginia; the evidence was sufficient to support a finding that petitioner violated § 12.1(d).

We conclude, therefore, that there was substantial evidence of record upon which the Board based its finding that petitioner violated applicable regulations and statutes as alleged.

In view of the foregoing, the order under review is

*Affirmed.*

vides that each licensee shall be responsible for the conduct of his employees or agents insofar as such conduct relates to the performance of undertaking services by or for the licensee.]