DONALD KURR *et al.*, Plaintiffs-Appellees, v. THE TOWN OF CICERO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—91—1579

Opinion filed September 25, 1992.

Joseph G. Bisceglia and Robert P. Zapinski, both of Jenner & Block, of Chicago, and Dennis E. Both, Town Attorney, of Cicero, for appellants.

John K. Kneafsey and Stephen G. Kehoe, both of Nisen & Elliott, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from an order granting plaintiffs summary judgment on the *mandamus* count of their two-count complaint. The order required defendants to issue a certificate stating that plaintiffs' property complied with the Town of Cicero's ordinances. We consider whether the notice requirement of Cicero's certificate of compliance ordinance was mandatory, whether the building commissioner was required under the ordinance to provide plaintiffs with written notice of any violations, and whether plaintiffs could obtain *mandamus* if their property violated Cicero's ordinances. For the following reasons, we reverse and remand.

In count I of plaintiffs' verified complaint, they alleged that they were the beneficial owners of property located in Cicero. There were two buildings on the property. Prior to 1974, when plaintiffs purchased the property, the front building was renovated into two apart-

ments and the garage was converted into one apartment. Plaintiffs alleged that the work was done pursuant to permits and in accordance with Cicero's ordinances. In 1989, they agreed to sell the property and applied for a certificate of compliance as required under Cicero's ordinance. They alleged that Cicero inspected the property twice but refused to issue the certificate due to what it claimed were violations of its ordinances. As a result, plaintiffs could not sell the property. They requested *mandamus* relief to require defendants to issue the certificate of compliance.

Defendants answered the complaint and denied the material allegations but admitted that without a certificate of compliance, plaintiffs could not sell their property. Defendants also filed a counterclaim alleging that plaintiffs' property violated Cicero's ordinances because there were two buildings on one lot when an ordinance allowed only one, the garage was converted into an apartment without a building permit, and the front apartment in the front building had only one means of egress when an ordinance required two. They also alleged that because the rear building had an assessed value of less than $2,000 in 1976, it had to be torn down. They attached a certified copy of a document from the assessor's office showing that in 1976, one building on the property was assessed at $4,392 and the other was assessed at $111.

Defendants moved for summary judgment on count I of the complaint arguing that plaintiffs were not entitled to *mandamus* because their property violated the ordinances. The following facts were taken from the affidavits, depositions, and other evidence presented in support of and in opposition to the motion.

After plaintiffs applied for the certificate of compliance, John Segal inspected the property on July 13, 1989. Plaintiff Donald Kurr and his real estate agent, Eugene Wojciechowski, were present. Kurr testified in his deposition that during the inspection, Segal told him that there might be a problem with egress from the front apartment. Wojciechowski testified in his deposition that Segal told him during the inspection that Cicero "didn't like two buildings on one lot."

Segal prepared an inspection report on the certificate of compliance form. Under a section titled "Violations," he noted that the electrical panel in the front building had to be upgraded and that smoke detectors had to be installed. Under another section titled "Deficiencies," he noted that the front apartment in the front building had one legal means of egress and that there was a "cottage" at the rear of the lot. A handwritten note at the top of the form stated "Hold two homes on one lot" with Segal's signature. Apparently within 30 days

of the inspection, plaintiffs requested and received a copy of this form.

Wojciechowski testified in his deposition that several days after the inspection he talked to defendant William Nisk, Cicero's building commissioner, who said Cicero "didn't want two houses on a lot." Nisk said he would reinspect the property.

Nisk inspected the property on August 9, 1989, with plaintiff Donald Kurr present. According to Nisk, the second exit from the front apartment was inadequate. Nisk testified in his deposition that he showed Kurr an alternative place to build the second exit. Nisk also told Kurr of his options concerning the rear building. He said he needed the assessed valuation from 1976 to determine whether the building had to be torn down. If the building had to be torn down, Cicero would pay the expenses. If plaintiffs sold the property on an installment contract, a certificate of compliance would not be required until the end of the contract term. Kurr stated in his affidavit and in his deposition that Nisk told him during the inspection that he could continue to own and rent the property or sell the property on contract without interference from Cicero. If he sold the property, Cicero would demolish the rear building at its expense.

John Mlade, plaintiffs' attorney, stated in his affidavit that on August 15, Nisk told him that the certificate would not be issued because the rear building did not have an assessed value of over $3,000[1] and would have to be demolished.

On August 22, Dennis E. Both, Cicero's attorney, told Mlade that the property violated the ordinances because there were two buildings on one lot and the rear building did not meet the minimum assessed value requirements of the ordinance. On August 25, Both wrote a letter to Mlade stating that the property was nonconforming because the zoning ordinance prohibited two primary residential uses on one lot.

On August 28, Nisk wrote a letter to Kurr stating that the property violated the building code because there were two buildings on one lot, the front apartment in the front building had only one legal means of egress when two were required, and the electrical panel had to be upgraded. As a result of the violations, Cicero would not issue a certificate of compliance.

---

[1]This is an apparent misquote of Cicero's ordinance, which states that the assessed valuation must be over $2,000. Cicero, Ill., Zoning Ordinance vol. I, ch. 40, par. 2L(9)(b)(1) (1977).

Kurr stated in his affidavit that the two items listed as violations on Segal's inspection report were corrected: the electrical panel was upgraded and the buildings had necessary smoke detectors.

On the day that defendants' motion for summary judgment was scheduled for hearing, plaintiffs filed an emergency cross-motion for summary judgment. They argued that defendants should be barred from asserting that the conversion was done without permits because they did not produce the permits until the day before the hearing. Defendants produced two permits for electrical work on the property which were issued in 1962. Plaintiffs requested summary judgment. Defendants filed a response to plaintiffs' emergency motion for summary judgment the next day.

After a hearing on both motions, the trial judge construed the language of the certificate of compliance ordinance requiring a "detailed report" of any violations to mean that the report had to be written. Only the violations listed on the certificate of compliance form that Segal prepared, rather than the deficiencies, could be the basis for denying the certificate of compliance. The only violations listed on the form were that plaintiffs had to upgrade the electrical panel and install smoke detectors. Plaintiffs asserted, and defendants did not dispute, that these violations were corrected. As a result, defendants could not deny plaintiffs the certificate of compliance on that basis. The judge entered summary judgment in plaintiffs' favor on count I of their complaint and ordered defendants to issue the certificate of compliance. Count II of the complaint and the counterclaim remained pending at that time. Defendants appealed.

This court dismissed the appeal for lack of jurisdiction under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) (*Kurr v. Town of Cicero* (1990), 208 Ill. App. 3d 455, 567 N.E.2d 405), and subsequently, the trial judge entered the required finding. Defendants appealed and the trial judge stayed the order pending appeal.

OPINION

Summary judgment should only be entered if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).

Defendants first argue that summary judgment was improperly entered because the notice requirement of the certificate of compliance ordinance was merely directory rather than mandatory. If it was

directory, defendants were not required to notify plaintiffs within 30 days of an inspection that their property violated the ordinance.

The ordinance states in relevant part:

"In the event the property inspected is found to be in full compliance with the Minimum Housing Code, Building Code, Electrical Code, Plumbing Code and Zoning Codes of the Town of Cicero, the Building Commissioner shall then immediately cause a Certificate to issue stating that the said property is in full compliance with said Ordinances. *If violations of said ordinances are found to exist, the Building Commissioner shall, as soon as practicable, but in no event later than 30 days following such inspection, provide the applicant with a detailed report of the violations to be corrected.* \*\*\* Upon correction of all violations specified by the Building Commissioner, the Building Commissioner shall then issue the required Certificate of Compliance." (Emphasis added.) Cicero, Ill., Zoning Ordinance vol. I, ch. 40, par. 40—4(A)(4) (1977).

The primary rule of statutory construction is to ascertain and give effect to the intent of the drafters and the court must give the language its plain and ordinary meaning. (*Thomas v. Greer* (1991), 143 Ill. 2d 271, 573 N.E.2d 814.) Construction of an ordinance is a question of law. *Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 569 N.E.2d 1182.

■ The ordinance states that a report of violations "shall, as soon as practicable, but in no event later than 30 days," be given to the applicant. The word "shall" may be defined as "must" or "may" depending on the context and the intent of the drafters. (*Village of Park Forest v. Fagan* (1976), 64 Ill. 2d 264, 356 N.E.2d 59.) A statute specifying the time for performing an official duty will be considered directory only when the rights of the parties cannot be injured by the failure to act within the time period. (*Park Forest*, 64 Ill. 2d 264, 356 N.E.2d 59.) But where the statute contains negative words, denying the exercise of power after the time period, or where a disregard of its provisions would injure public rights or private rights, it is mandatory rather than directory. *Park Forest*, 64 Ill. 2d 264, 356 N.E.2d 59.

In this case, the use of the word "shall" in the ordinance coupled with the negative words "but in no event later than 30 days" leads to the conclusion that the notice provision was mandatory rather than directory. Further, an applicant would be injured if he did not receive notice of the violations because he would not have an opportunity to correct the violations and, as a result, could not obtain the certificate and sell the property. Therefore, the provision was mandatory and

defendants were required to notify plaintiffs of any violations within 30 days of an inspection.

Defendants also argue that the ordinance did not require a written report of the violations to be corrected. If it did not require a written report, then the oral communications between the parties would have to be considered to determine whether the notice was sufficient.

The ordinance states that the building commissioner must provide the applicant with a "detailed report" of any violations. The word "detailed" is defined as "marked by abundant detail or by thoroughness in treating small items or parts." (Webster's Third New International Dictionary 616 (1971).) The word "report" is defined as "something that gives information: a [usually] detailed account or statement ***[;] NOTIFICATION[;] *** a [usually] formal account of the results of an investigation given by a person or group authorized or delegated to make the investigation." Webster's Third New International Dictionary 1925 (1971).

■ The ordinance itself does not expressly state that the report must be written; the only requirement is that it must be detailed. Neither the definition of the word "detailed" nor "report" indicates a requirement that a "detailed report" be in writing. Therefore, a "detailed report" could be either oral or written. As a result, the trial judge ignored the plain language of the ordinance when he found that the report must be written.

■ Because the building commissioner was required under the ordinance to provide either a written or an oral report of violations within 30 days of an inspection, the question becomes whether plaintiffs were so notified of defendants' claimed violations: there were two buildings on the lot, which violated the ordinance prohibiting more than one principal detached building on a lot; and the front apartment in the front building had only one exit when the ordinance required two safe, unobstructed exits. See Cicero, Ill., Zoning Ordinance vol. I, ch. 40, par. 2C (1977); Cicero, Ill., Minimum Housing Code art. VII, ch. 19, par. 19—78(i) (1977).

During the first inspection, Segal said that Cicero did not "like" two buildings on one lot. In his written report on the certificate of compliance form, which plaintiffs do not dispute they received within 30 days, Segal noted "hold two homes on one lot." He listed the two alleged violations as deficiencies. Several days after the inspection, Nisk told Wojciechowski that Cicero did not "want" two homes on one lot.

During the second inspection, plaintiffs were told that if they wanted to sell the property, the rear building would have to be demolished. They were also told, orally and in writing, within 30 days of the second inspection that the property violated the ordinance because it had two homes on one lot and because the front apartment had only one means of egress.

Plaintiffs dispute that they were given sufficient oral or written notice within 30 days of the first or second inspection. Both plaintiffs and defendants recognize in their arguments on appeal that whether the notice was sufficient is a question of fact which cannot be resolved on summary judgment. As a result, summary judgment in plaintiffs' favor must be reversed.

Lastly, defendants argue that plaintiffs were not entitled to *mandamus* in any event because they did not show that their property complied with Cicero's ordinances.

"*Mandamus* is discretionary and is appropriate only where there is a clear right to the requested relief, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ." (*Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 467-68, 537 N.E.2d 784, 791.) Before a writ of *mandamus* can be issued, plaintiff must show compliance with all the valid requirements of any applicable ordinances. (*Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266.) When there are issues of fact to be decided, *mandamus* is improper. *Owen v. Mann* (1985), 105 Ill. 2d 525, 475 N.E.2d 886.

█ In this case, plaintiffs argue that the property does not violate the ordinances because the two items noted as violations on Segal's form were corrected. Even if Segal's characterization of the items as deficiencies rather than violations was significant, plaintiffs' argument completely ignores the second inspection of the property where defendants asserted those items as violations. Plaintiffs must show compliance with the ordinances prohibiting two buildings on one lot and requiring two safe, unobstructed exits. Also, to avoid tearing down the rear building, they would have to show that it had an assessed value of over $2,000 on July 1, 1976. (See Cicero, Ill., Zoning Ordinance vol. I, ch. 40, par. 2L(9)(b)(1) (1977).) Plaintiffs do not dispute that there are two buildings on the lot, but in the trial court, they argued that the rear building had an assessed value of over $2,000 and that the second exit from the front apartment was adequate. The question of whether plaintiffs' property complied with these ordinances is one of fact and neither *mandamus* nor summary judgment can be granted when issues of fact remain to be decided.

Defendants raise several other arguments challenging summary judgment in plaintiffs' favor. They argue that the trial judge erred when he denied defendant Henry Klosak's motion to dismiss but they did not cite supporting authority. As a result, this court will not consider that argument. (*Board of Regents for Regency Universities v. Human Rights Comm'n* (1990), 196 Ill. App. 3d 187, 552 N.E.2d 1373.) It is not necessary to discuss defendants' remaining claims of error based on the finding that summary judgment in plaintiffs' favor was improper.

Reversed and remanded.

MURRAY and GORDON, JJ., concur.