**Anthony BROWN, Appellant**

v.

**DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.**

**No. 08–CV–1550.**

District of Columbia Court of Appeals.

Submitted Feb. 25, 2010.

Decided May 12, 2011.

---

Leslie Deak, was on the brief, for appellant.

Bruce A. Fredrickson, Cedar P. Carlton, and Geoffrey H. Simpson, Washington, DC, were on the brief, for appellee.

Before PRYOR, TERRY, and STEADMAN, Senior Judges.

TERRY, Senior Judge:

Appellant, Anthony Brown, appeals from an order of the Superior Court which denied review of a decision by the Public Employee Relations Board ("PERB") ter-

minating his employment with the Metropolitan Police Department. He argues that the PERB lost jurisdiction over his case when it took more than the 120 days allowed by statute to issue a decision. He also contends that, because the so-called *Douglas* factors [1] were not considered by the arbitrator in his final decision, the penalty determination should be reversed. We reject the first argument on the merits, decline to consider the second because it was not raised below, and affirm the trial court's order.

## I

Appellant joined the Metropolitan Police Department ("MPD") on March 18, 1985, and served for fifteen years as a police officer. During that time he received several favorable commendations for his service. The actions leading to his termination began after he separated from his wife in June of 1998, after nearly four years of marriage.

Appellant admitted that after their separation he telephoned his wife daily, attempted to see her at her residence in July of 1998, and obtained her telephone and pager records in an effort to find out whether she was seeing another man. In November of 1998 appellant's wife brought criminal charges against him in Maryland for these acts and applied to the Maryland court for an order of protection.[2] An arrest warrant was issued on the criminal charges, leading Mr. Brown to turn himself in to the sheriff's department in Prince George's County, Maryland. Soon thereafter he was released on bond.

The couple had no further contact until January 1, 1999, when Mr. Brown went to his wife's residence to see her. This encounter ended with mutual allegations against each other: she claimed that he put her in a choke hold, and he claimed that she sprayed him with mace. On April 23, 1999, both of the Browns appeared in the District Court of Prince George's County for adjudication of all the criminal charges against Mr. Brown. He was found not guilty of assault, and the remaining charges were dismissed.

Along with the criminal charges against him, Mr. Brown was subjected to three adverse actions by the MPD. These actions were based on (1) the July 1998 allegations that he had left threatening phone messages for his wife, appeared at his wife's house and, when she would not allow him in, brandished his weapon; (2) the November 1998 arrest for telephone misuse in repeatedly calling his wife over her objection; and (3) the January 1999 charge of assaulting his wife. The MPD later amended its proposed adverse actions to include charges of making untruthful statements to superiors and committing acts that would constitute a crime under Maryland law.

An adverse action panel was convened on August 21, 1999, to consider Mr. Brown's case. After a hearing, it found that he had continually telephoned his wife, over her repeated requests for him to stop, and that this misuse of the telephone constituted a crime. The panel also found, however, that Mr. Brown did not brandish his pistol during his July attempt to see his wife. The panel concluded that Brown was guilty of (1) conduct unbecoming an officer and (2) commission of an act that would constitute a crime. Although sever-

1. *See Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1981).

2. The protective order was denied after the court found that there was no actual threat to Mrs. Brown, and that she was seeking the order as a form of retaliation against her husband for obtaining her phone and pager records.

al of Mr. Brown's supervisors and fellow officers testified on his behalf, urging that he be returned to duty, the panel recommended his termination. Brown's administrative appeal was rejected, and he was discharged from the police department.

After Brown's discharge, the Fraternal Order of Police/MPD ("FOP/MPD") Labor Committee submitted his case to arbitration. The arbitrator ruled that procedural rules had been violated when Mr. Brown's request to appeal from the initial decision had not been answered within fifteen days. Because of this error, the arbitrator in March 2001 issued an award reinstating Mr. Brown to the police department. This award was contested by the MPD, but the PERB found no statutory basis for setting aside the arbitrator's award and rejected the MPD's challenge.[3] The MPD then filed a petition for review with the Superior Court, which concluded that the arbitrator had exceeded his authority when he rescinded Brown's termination solely because of the violation of the fifteen-day rule. Subsequently, the PERB remanded the case to the arbitrator for a decision on the merits.[4]

On remand, the arbitrator agreed with the panel's original finding that Brown had engaged in conduct unbecoming an officer when he made calls to his wife on a daily basis after they had separated. Possible penalties for this violation ranged from a three-day suspension to removal from the police force. After considering the appropriate remedy in light of the factors outlined in the *Douglas* decision, *supra* note 1, the arbitrator concluded that a suspension of 120 days was appropriate. The arbitrator also considered whether Brown's phone calls to his wife violated Maryland's criminal statutes, for which the only penalty available was termination. He found, however, that the record did not reflect the requisite intent "beyond a reasonable doubt" because "the evidence more strongly suggests ... attempting to effect a reconciliation ... and sort through his suspicions of her having an extramarital affair."

The MPD once again challenged the arbitrator's decision by filing a petition for review with the PERB on September 10, 2003. More than a year later, on November 24, 2004, the PERB granted the request for a review of the arbitration. The PERB subsequently ruled that the arbitrator had incorrectly required the facts to support the criminal charges "beyond a reasonable doubt," even though the MPD's regulations required proof only by a "preponderance of the evidence." The PERB also found no support for the arbitrator's assertion that specific intent must be proved to sustain a disciplinary charge based on a criminal act. The case was remanded once again to the arbitrator for application of the appropriate standard of proof on the second charge. On December 29, 2004, the arbitrator ruled that Brown's misuse of the telephone to harass his former wife was a criminal act, for which the sole applicable penalty was termination.

Because the arbitrator's decision on remand did not include a mitigation analysis, the FOP/MPD Labor Committee filed a petition for review with the PERB on January 24, 2005. More than two years later, on September 21, 2007, the PERB denied that request and affirmed the arbitrator's decision. The Labor Committee sought further review in the Superior Court, but the court denied the Committee's petition, rejecting the argument that the PERB's jurisdiction lapsed after it exceeded the

---

3. Opinion No. 662, PERB Case No. 01–A–05 (September 25, 2001).

4. Opinion No. 719, PERB Case No. 01–A–05 (June 16, 2003).

120–day deadline for decisions set by D.C.Code § 1–617.14 (2001). The court also found that Mr. Brown (*i.e.*, the Labor Committee) had failed to object to the arbitrator's jurisdiction on remand, thus waiving any jurisdictional challenge. Finally, the court concluded that the arbitrator acted within his authority when he determined that the appropriate penalty was termination. This appeal followed.

## II

Appellant argues that, by taking more than 120 days to issue a decision, the PERB lost jurisdiction over the case. Consequently, he maintains, there was no authority for the PERB to order the case to be remanded for reconsideration under the appropriate standard of proof or, indeed, any standard of proof. In the alternative, he contends that if the remand was permissible, the arbitrator's failure to apply the *Douglas* factors to the decision on remand should result in a reversal.

### A. *The 120–Day Time Limit*

We review the decision of the PERB as if it had come to this court directly, rather than through the Superior Court. *E.g., Gibson v. District of Columbia Public Employee Relations Board,* 785 A.2d 1238, 1241 (D.C.2001). We look to see if the factual findings in PERB decisions are supported by substantial evidence and if the legal conclusions are reasonable. *Public Employee Relations Board v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C.1989). Those decisions will not be overturned unless they are unsupported by "substantial evidence" or are "clearly erroneous as a matter of law." Super. Ct. Agency Review Rule 1(g).

The District of Columbia Code provides that decisions made by the PERB "shall be rendered within a reasonable period of time, and in no event later than 120 days after the matter is submitted or referred to it for a decision." D.C.Code § 1–617.14 (2001). The last two decisions by the PERB in this case were both made well beyond the 120–day limitation imposed by the statute. For that reason, appellant argues that the PERB lost jurisdiction over his case and therefore could not remand it to the arbitrator for consideration under the proper standard of proof. The PERB argues, to the contrary, that the statute's time limitation is intended to be directory, not mandatory, and therefore that the passage of more than 120 days does not deprive it of jurisdiction. Further, the PERB maintains that the jurisdictional issue was waived in this particular instance because appellant failed to object to its jurisdiction during the arbitration proceedings.

While the word "shall" usually denotes a mandatory duty, this court has held that when it is used in a statute, the word is sometimes found to be merely directory "for obvious reasons founded in fairness and justice." *JBG Properties, Inc. v. District of Columbia Office of Human Rights,* 364 A.2d 1183, 1185 (D.C. 1976) (holding that instruction for the Office of Human Rights to take action on complaints within a specified time was directory and that failure to meet that deadline did not require dismissal of the complaint). Thus we concluded in *JBG Properties* that the dismissal of actions based on "a slight delay on the part of a public officer" would "prejudice private rights and public interest." *Id.* Consequently, when a statute says that an agency "shall" make a decision within a set period of time, that limit is generally considered "directory rather than mandatory." *Spicer v. District of Columbia Real Estate Comm'n,* 636 A.2d 415, 418 (D.C. 1993). The limitation will be construed as

mandatory, however, when the statute goes further by providing a sanction if the agency fails to act within the prescribed period. *Id.* This general rule means that a statutory time limit for agency action which is not accompanied by attendant sanctions raises a rebuttable presumption that the time limitation is intended to be merely directory. *Teamsters Local 1714 v. District of Columbia Public Employee Relations Board,* 579 A.2d 706, 710 (D.C. 1990).

Invoking this general rule, the PERB relies on the lack of a sanction in the statute imposing a 120–day limit on its decisions to support its position that this time limit is directory, not mandatory. We have also held, however, that the presumption that a statutory time limitation is directory may be overcome after considering the "nature of the act to be performed" and the "phraseology of the statute" to see whether it should "be considered a limitation of the power of the [public] officer." *Id.* (citations omitted). To this end, appellant argues that the language requiring the agency to issue a decision "in no event later than" the 120–day limit is precisely the kind of phraseology that signals a limitation on the agency's power. He points to several state court decisions which have held language requiring that an act be done "not later than" or "in no event later than" a specified time to be mandatory. *See Ursino v. Superior Court,* 39 Cal. App.3d 611, 619, 114 Cal.Rptr. 404, 410 (1974) (when an ordinance provided that the Board of Permit Appeals was required to act "not later than 40 days" after the filing of an appeal, "[t]he use of the word 'shall' in conjunction with the phrase 'not later than' [was] clearly indicative of a mandatory declaration" (citations omitted)); *Kurr v. Town of Cicero,* 235 Ill. App.3d 528, 535, 176 Ill.Dec. 535, 545, 601 N.E.2d 1233, 1236 (1992) (holding that statutory requirement that town building commissioner "shall" provide applicant with list of violations to be corrected "in no event later than 30 days following such inspection" must be construed as mandatory); *City of Philadelphia v. Pennsylvania Labor Relations Board,* 531 Pa. 489, 614 A.2d 213, 214 (1992) (holding that the statutory phrase "in no event later than" imposed a mandatory time limit for a budget submission, after which the labor board could no longer appoint fact-finders in a negotiation). In cases such as these, the courts have noted a particular need to "ensure expeditious action" and to avoid "arbitrary and capricious delay" on the part of the agency. *See Foley v. Civil Service Comm'n,* 89 Ill.App.3d 871, 873, 45 Ill.Dec. 261, 262, 412 N.E.2d 612, 613 (1980).

However, while appellant's cited cases support the possibility ·that the language may be read as mandatory, we have generally not reached the same conclusion when interpreting similar phrases in the District of Columbia Code as applied to other public officials. For example, when we considered the requirement that an official make a decision regarding an undertaker's license "as soon as practicable, but not later than ninety days," we held that the language was directory, not mandatory. *Vann v. District of Columbia Board of Funeral Directors,* 441 A.2d 246, 247–248 (D.C.1982). This holding is in line with other cases cited by the PERB to illustrate our reluctance to disturb the rulings of public agencies even when extensive delays have occurred. *See, e.g., Anjuwan v. District of Columbia Dep't of Public Works,* 729 A.2d 883 (D.C.1998) (upholding a decision of the Office of Employee Appeals made two and a half years after the expiration of a 120–day statutory time limit); *Harris v. District of Columbia Comm'n on Human Rights,* 562 A.2d 625 (D.C.1989) (rejecting argument that delay of more

than ten years required reversal based on prejudice allegedly resulting from agency's inaction). Appellant strives to distinguish these cases by arguing that the time limits, such as those for the Commission on Human Rights in the *Harris* case, applied to distinct steps in the review process but not to the final decision of the Commission. We do not read those prior decisions as turning on such a distinction. Nor has appellant, apart from citing cases in other jurisdictions, given us any reason why we should not conclude that the time limit in this case is directory, as we have held in other cases upholding actions exceeding the statutory time limit when there was no sanction attached to any failure to meet the time limit.

Having determined that the time limit was directory, we would normally conduct a balancing test, as we did in *Vann*, to determine whether the agency's delay caused sufficient prejudice to appellant to outweigh the normally prevailing interest in allowing the agency to act after the expiration of the time limit. *See Vann*, 441 A.2d at 248. When the statute applicable in a particular case is directory, the balancing test set forth in *JBG Properties* must be applied. *See JBG Properties*, 364 A.2d at 1187 (establishing a balancing test for such cases to determine (1) potential and actual prejudice to the losing party and (2) public and private interests in allowing the agency to proceed after the time limit). But before proceeding to that step, we must first consider whether such an inquiry should be conducted at all, since appellant did not object to the jurisdiction of the arbitrator after the PERB remanded the case for reconsideration after the 120–day time limit had expired.

■ The PERB contends that the entire issue of jurisdiction has been waived because Brown participated in the arbitration process without raising the issue at all

prior to the final arbitration decision. *See Howard University v. Metropolitan Campus Police Officer's Union*, 379 U.S.App. D.C. 282, 286, 512 F.3d 716, 720 (2008) (noting that the federal circuits are in agreement that objections to jurisdiction must be made at the arbitration proceeding in order to be presented to a reviewing court, and citing cases from five other circuits). In this case the trial court agreed with the PERB that the lack of objection during the arbitration waived the issue and precluded further review. Appellant does not present us with any new argument to the contrary on appeal; instead, he states only that he is incorporating the arguments he made before the trial court. There he asserted that no objection could be made because there was no "participation" in the proceedings once they were remanded. In support of this contention, he relied on *International Brotherhood of Electrical Workers Local 545 v. Hope Electrical Corp.*, 380 F.3d 1084 (8th Cir.2004).

We agree with the trial court that appellant's reliance on *Hope Electrical*, which successfully challenged an arbitrator's substantive jurisdiction but not his procedural jurisdiction, is misplaced. As the Eighth Circuit made clear in its decision, procedural jurisdictional challenges involve the question of whether procedural safeguards established by the collective bargaining process were followed, whereas substantive jurisdictional challenges turn on the dual issues of whether the parties have a valid contract to resolve their dispute by arbitration and whether that contract authorizes arbitrators to "decide the substantive issue submitted for resolution." *Id.* at 1098. After making this distinction clear, the court in *Hope Electrical* held that procedural challenges to the arbitrator's jurisdiction could not be addressed when "the party opposed to arbitration failed to raise

the issues of procedural arbitrability with the arbitrators." *Id.* at 1099 (holding further that substantive challenges to the arbitration could go forward when a motion to vacate the arbitration award was timely made).

Appellant asserted below that "neither party had the opportunity to raise this issue with the arbitrator on remand." This assertion is not supported by the record. Although appellant was fully aware of the remand order, he has not made any showing, either to the trial court or to this court, that he took steps to notify the arbitrator of his objection to jurisdiction on remand. Nor has appellant argued—nor could he—that the objection could have been anything but a procedural challenge to the jurisdiction of the arbitrator, since it was predicated solely on the lapse of time before the decision to remand was issued. Therefore, following the District of Columbia Circuit's decision in *Howard,* we hold that appellant has waived his right to challenge the arbitrator's jurisdiction on this appeal. Consequently, we need not conduct any further *Vann*-type inquiry into the balance of equities under the directory time limit of 120 days which the statute places on the PERB for rendering decisions.

### B. *The Douglas Factors*

Appellant also contends that the final decision of the arbitrator cannot stand because it failed to include any explicit consideration of the *Douglas* factors.[5] This contention rests on his assertion that those factors would have made termination an unreasonable penalty when viewed in light of the circumstances of his divorce.

As the PERB notes in its brief, however, appellant "never raised this argument before the Board." Nor did it raise the issue before the trial court in its petition for review, as the court pointed out in a footnote in its order; for that reason the trial court declined to address appellant's *Douglas* claim. We decline to consider it for the same reason. On a clearer record we might be in a position to consider the *Douglas* factors, but on the actual record before us we conclude that appellant has waived his *Douglas* argument.

### III

The order of the Superior Court denying review of the PERB decision is therefore

*Affirmed.*

---

5. In *Douglas* the Merit Systems Protection Board listed twelve factors to be considered when a reviewing tribunal is called upon to decide whether the penalty imposed by an agency is merited. *Douglas,* 5 MSPB at 332, 5 M.S.P.R. at 305–306. Among these are "the nature and seriousness of the offense [in] relation to the employee's ... position," "the employee's ... type of employment," "the employee's past disciplinary record [and] work record," and any "mitigating circumstances surrounding the offense." *Id.* at 332, 5 M.S.P.R. at 305. The *Douglas* factors are applied when there is a range of penalties available or when the prescribed penalty is "arbitrary, capricious, or unreasonable" or reflects "an abuse of agency discretion." *Id.* at 326–327, 5 M.S.P.R. at 299.