JOSEPH P. MONAHAN, Plaintiff and Counterdefendant-Appellant, v. THE VILLAGE OF HINSDALE, Defendant and Counterplaintiff-Appellee (William Wilcox *et al.*, Defendants-Appellees; Judy Waldherr *et al.*, Defendants).—JOSEPH P. MONAHAN, Plaintiff-Appellee, v. THE VILLAGE OF HINSDALE, Defendant-Appellant.

Second District Nos. 2—90—0576, 2—90—0667, 2—90—0740 cons.

Opinion filed March 28, 1991.

John R. Wimmer, of State Appellate Defender's Office, of Downers Grove, for appellant Joseph P. Monahan.

Clifford L. Weaver and Matthew E. Norton, both of Burke, Bosselman & Weaver, of Chicago (Mark E. Burkland, of counsel), for Village of Hinsdale and other appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Joseph P. Monahan, appeals the denial of the relief sought by him in a complaint for an injunction and a declaratory judgment against defendants, the Village of Hinsdale (hereinafter Village) and William Wilcox, Colleen Wilcox, Joseph Bardusk, Mrs. Joseph Bardusk, Norman Waldherr, Judy Waldherr, Cynthia Langlois and David Geiman. Plaintiff sought to enjoin the Village from enforcing the Hinsdale Zoning Code's six-foot side yard requirement to the north side of his property where the residence had been altered and enlarged. Plaintiff also sought a declaration that the doctrine of estoppel precluded enforcement of the six-foot side yard requirement. The Village filed a counterclaim for injunctive relief against Joseph Monahan to enforce the six-foot side yard requirement.

Following a bench trial, the trial court entered an order denying the relief sought by the plaintiff and granting judgment in favor of the defendants on the Village's counterclaim. In addition, the trial court entered an order mandating specific injunctive relief against Monahan on the Village's counterclaim. Monahan appeals the specific injunctive relief. Subsequently, the Village filed a motion for sanctions against Monahan under Supreme Court Rule 137 (134 Ill. 2d R. 137). The court denied the motion for sanctions. The Village appeals the de-

nial of its motion. We affirm both the grant of injunctive relief in favor of the Village and the denial of the Village's motion for sanctions. The facts of this case are as follows.

The property involved in this action is located at 113 South Quincy, Hinsdale, Illinois. In the spring of 1989, Joseph Monahan purchased this property from Kenneth Peterson and Susan Arbanas. The Monahans took possession of the property in June 1989. At that time the property was improved with a one-story house. The front of the house faced west. The back of the house had an open wooden deck at the northeast corner.

The property was zoned in a single-family residential district under the Hinsdale Zoning Code. As such, the property is required to have a minimum six-foot side yard on each side of the house. However, the entire north wall of the house and the northern edge of the wooden deck are within three feet of the north lot line. Because the house was built before the effective date of the Village's zoning code, it is a legally nonconforming structure.

Late in spring 1989 plaintiff contacted an architect, Mark Ridolphi, to discuss his plans to expand and remodel the house from a one-story to a two-story residence. On May 10, 1989, Mr. Ridolphi and the plaintiff went together to inspect the house. Mr. Ridolphi took photographs of the house and the wooden deck that day. The photographs were to serve to record the current condition of the house and to chart the progress of construction. Plaintiff also videotaped the house for this same purpose.

On July 14, 1989, plaintiff submitted building plans along with a building permit application to the Village for the proposed expansion and remodeling project. The Village rejected these plans because they violated the Village's floor area ratio and building coverage requirements. On July 27, 1989, plaintiff submitted a new application and a second set of plans to the Village. The revised plans called for the addition of a second story to the house, in addition to the removal of the enclosed back porch and wooden deck and the replacement of it with an enclosed, roofed, one-story addition to the house.

On July 31, 1989, the Village building commissioner, Charles Schmidt, called plaintiff to discuss the building permit application and plans. Schmidt told the plaintiff that construction of the enclosed, roofed addition to the house in place of the deck would increase the existing side yard nonconformity. Under the Village's interpretation of subsection 10—104B of the Hinsdale Zoning Code, an open, unenclosed, roofed structure which does not conform to existing zoning re-

quirements cannot be replaced with an enclosed, roofed structure on a foundation because it would increase the nonconformity.

Plaintiff assured building commissioner Schmidt there was a roof over the deck even though the building plans did not show one. In addition, plaintiff told building commissioner Schmidt that he had photographs or a videotape depicting the roof over the deck. On August 25, 1989, plaintiff again assured Schmidt that the deck had a roof over it. Based on plaintiff's representations, building commissioner Schmidt determined that the approved plans did not violate subsection 10–104(B). A building permit was issued on August 25, 1989.

Plaintiff demolished the existing deck on Labor Day weekend 1989 and began construction on the house expansion on September 5, 1989. On October 12, 1989, during an inspection of the construction, building commissioner Schmidt discovered that the north wall of the house, which included the new one-story roofed addition at the northeast corner, extended approximately two feet farther than had the old "roofed" deck. Thus, the new structure increased the side yard nonconformity because a greater portion of the new structure fell within the minimum required six-foot side yard. Schmidt ordered the plaintiff to stop work on the rear two feet of the house. Plaintiff applied for a variation before the Zoning Board of Appeals (ZBA). The ZBA denied the plaintiff's request for a variation.

The plaintiff filed a complaint for an injunction and declaratory judgment against the Village and several neighbors seeking to enjoin the Village from enforcing the six-foot side yard requirement. Plaintiff claimed the Village was estopped from applying the ordinance because it had issued the building permit. In paragraph 5 of his complaint, the plaintiff alleged that the property was improved with a "wooden deck partially covered with a roof of wooden slats with spaces between the slats." The Village filed an answer and counterclaim seeking an order by the court for plaintiff to remove the portion of the house that violated the side yard requirement. At that time the Village still believed a roof existed over the deck.

During discovery, the Village deposed the plaintiff at which time he described the roof in detail. The Village also deposed the plaintiff's architect, Mr. Ridolphi. Mr. Ridolphi produced the photographs taken on May 10, 1989, which depict the deck. The photographs show no roof over the deck. Similarly, the plaintiff's videotape, which was admitted into evidence at trial, showed no roof over the deck before it was demolished.

At trial, the former owner of the house, Susan Arbanas, testified that the deck did not have a roof over it at any time while she lived

there or when she and her husband sold the house to the plaintiff. In addition, neighbors Colleen Wilcox and Joseph Bardusk, also defendants in this case, testified at trial that the photographs accurately depicted the deck without a roof.

The trial court entered judgment against the plaintiff and in favor of the Village, finding that before the issuance of the building permit, plaintiff had represented to the Village that the deck had a roof, and the Village issued the permit for construction of the proposed replacement in reliance on the plaintiff's representations. Further, the court found no roof existed and, therefore, the expansion violated the Village's side yard requirement. The trial court ordered specific injunctive relief, requiring plaintiff to remove the offending portion of the structure.

In addition, the Village filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (134 Ill. 2d R. 137). The Village alleged the plaintiff's complaint, motion for preliminary injunction and verified amended answer and affirmative defense contained intentionally false allegations. The Village alleged it spent more than $51,330.95 as a result of the plaintiff's false allegations. The trial court denied the Village's motion.

On appeal, plaintiff contends the trial court erred in finding the house as altered violated the Village's side yard requirement. Plaintiff also contends the trial court erred by denying his claim of estoppel on the basis of the incorrect representations he made to the building commissioner because those representations were immaterial to that claim. The Village contends the trial court did not have jurisdiction to review the plaintiff's ordinance interpretation argument because the plaintiff had not exhausted his administrative remedies. Lastly, the Village contends the trial court erred in denying the Village's motion for sanctions. We affirm.

The Village claims the addition to the back of plaintiff's house which replaced the wooden deck violates the Village zoning ordinance because the deck did not have a roof, as plaintiff represented it did. The Village asserts building an addition where a previously unroofed structure stood increases the nonconforming use of the side yard as prohibited by the ordinance. The plaintiff, however, amended his answer and added an affirmative defense claiming the word "roof" did not appear in the ordinance at issue. The Village now contends on appeal that the trial court did not have jurisdiction to hear this argument because plaintiff had not followed the means for review of the Village's zoning ordinance provided by the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—102).

■■ The Illinois Municipal Code authorizes a municipality's zoning board of appeals to hear and decide appeals. (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—12.) The Municipal Code also provides all final decisions of the zoning board of appeals shall be subject to judicial review pursuant to the Administrative Review Law. (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—13.) If an owner wishes to challenge a Village official's interpretation of a zoning ordinance, the owner must do so by appealing the interpretation to the zoning board of appeals. (Hinsdale, Ill., Zoning Code §11—502(A).) The ZBA's decision would then be a final administrative determination subject to judicial review under the act.

The Village contends plaintiff is prohibited from now raising the ordinance interpretation requirement because he failed to appeal building commissioner Schmidt's interpretation of the ordinance before the ZBA. The Village claims plaintiff chose to file an independent action for equitable relief instead of following the established administrative procedures and, as such, should be prohibited from raising the ordinance interpretation argument for the first time in the trial court. The Village cites the *Bright* doctrine in support of this contention. *Bright v. City of Evanston* (1956), 10 Ill. 2d 178.

■■ Under the *Bright* doctrine, where a plaintiff is merely claiming the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, judicial relief is only available after administrative remedies have been exhausted. (*Bright,* 10 Ill. 2d at 185.) However, our supreme court has found an exception to the *Bright* doctrine. In *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, 260, the court held that if a government institutes an action against the owner for an ordinance violation, the owner should be entitled to defend on the ground of the invalidity of the ordinance and have the issue determined.

■■ The Village argues the *MacNeal* "defense exception" should not apply in this case because the plaintiff initiated this action in the first instance. We disagree. It is true the plaintiff instituted this action, but the action was filed not to obtain judicial review of the Village's interpretation of the ordinance, but to obtain equitable relief to prevent the ordinance from being enforced against the plaintiff's property. Plaintiff previously went before the ZBA to ask for a variation on his property, but his request was denied. Now, plaintiff is claiming the Village is equitably estopped from enforcing the ordinance against his property because the Village issued the plaintiff a building permit and he acted in reliance on it.

The Village, in turn, counterclaimed against the plaintiff to enforce the ordinance against his property claiming the plaintiff misrepresented the facts necessary under the ordinance to obtain a building permit. In noting the differences between a property owner who initiates an action to declare an ordinance invalid and one who is charged with illegally violating it, the court in *MacNeal* stated:

> "Whereas, in the first instance, it is the view that zoning litigation should not be initiated until the local authority has a chance to correct the errors that may have occurred in broad comprehensive ordinances, in the latter instance the very act of filing a complaint reflects a judgment on the part of the local authority that, as to the property concerned, they see no particular hardship and no necessity to correct the zoning regulation. To compel a property owner to first seek local relief in the face of a demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice." *MacNeal*, 24 Ill. 2d at 260.

■ The same reasoning applies to the present situation. The Village has indicated by filing its counterclaim its intention to enforce the ordinance as interpreted by building commissioner Charles Schmidt against the plaintiff's property. Just as in *MacNeal*, the interests of justice are not served by prohibiting the plaintiff from defending himself against the counterclaim.

The Village contends the court's decision in *City of Chicago v. Zellers* (1965), 64 Ill. App. 2d 24, supports its interpretation of the *MacNeal* exception. We disagree. In that case, the city revoked a building permit after learning it was issued wrongfully and then instituted an action to enforce its nuisance ordinance prohibiting the maintenance of the excavation. The owner, by counterclaim, responded that the city's zoning ordinance area and yard requirements were invalid as applied to his property. The court held that because the city was seeking to enforce its nuisance ordinance, the property owner was the first to bring an action involving the validity of the zoning ordinance rendering the *MacNeal* "defense exception" inapplicable. (*Zellers*, 64 Ill. App. 2d at 32.) As stated previously, circumstances surrounding this case are substantially different.

The plaintiff sought equitable relief based on a claim of reliance. The Village sought to enforce the ordinance as interpreted by building commissioner Charles Schmidt against the plaintiff. Plaintiff is clearly entitled to defend against the Village's interpretation of the ordinance

it is seeking to enforce against the plaintiff in accordance with the *MacNeal* doctrine.

We turn now to the ordinance interpretation issue. Plaintiff asserts the trial court erred in finding the plaintiff's house, as altered and enlarged, was in violation of the Village ordinance requiring a six-foot side yard because the ordinance did not specify that a "pre-code structure" must have a roof to allow for alteration and enlargement without increasing the nonconformity. The Village claims its interpretation of the ordinance is now and has always been that the definition of a "pre-code structure" includes roofed structures only.

The ordinance at issue is section 10—104(B) of the Hinsdale Zoning Code. It provides, in pertinent part, as follows:

"Any pre-code structure may be *** altered, [or] enlarged *** provided, however, that no such *** alteration, [or] enlargement *** shall either create any new *** yard *** nonconformity or increase the degree of any *** yard *** nonconformity of all or any part of such structure as it existed on the effective date of this Code ***.

For the Purposes of this Subsection B, the vertical extension of a structure within the limits of applicable height regulations shall not be construed to increase the degree of an existing nonconformity related to a required yard ***." (Hinsdale, Ill., Hinsdale Zoning Code §10—104(B).)

Plaintiff is correct when he asserts the word "roof" does not actually appear under the definition of the words "pre-code structure" or "structure" in the ordinance. (Hinsdale, Ill., Hinsdale Zoning Code §§12—206(S), (P).) However, the Village asserts its interpretation that an open, unroofed structure in violation of a zoning regulation may not be replaced with an enclosed, roofed structure because it would increase the nonconformity has been the rule in the Village for at least 16 years.

 █ This court has held the construction of a statute, ordinance or constitutional provision is a question of law. Accordingly, the reviewing court may make an independent determination and need not defer to the decision of the trial court. (*County of Lake v. Zenko* (1988), 174 Ill. App. 3d 54, 60.) Zoning ordinances are to be construed the same way as statutes. (*La Salle National Bank v. The Thresholds* (1975), 27 Ill. App. 3d 635.) Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance. (*Pioneer Trust & Savings Bank v. County of*

*Cook* (1978), 71 Ill. 2d 510; *Zebulon Enterprises, Inc. v. County of Du Page* (1986), 146 Ill. App. 3d 515, 518.) Because agencies can make informed judgments on the issues based upon their experience and expertise, it is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53.

Building commissioner Schmidt testified that building a roofed structure where none previously existed expands the nonconformity of a precode structure. Although subsection 10—104(B) and its predecessor have been in existence only since 1988, the Village's interpretation of what increases the nonconformity of a precode structure is a long-standing one. Building commissioner Schmidt testified at trial that this has been the rule in the Village for at least 16 years, the duration of his employment as Village building commissioner. Moreover, building commissioner Schmidt informed plaintiff on more than one occasion that in order to build the addition where the deck had once stood, it was necessary that a roof had once covered the deck. Plaintiff, aware of this requirement, misrepresented to the Village that the deck had been covered with a roof made up of wooden slats spaced a number of inches apart.

■ A reviewing court will defer to the administrative entity's practical construction of the ordinance unless it is clearly erroneous, arbitrary or unreasonable. (*Foster & Kleiser v. City of Chicago* (1986), 146 Ill. App. 3d 928, 933.) In this case, considering the goals sought to be advanced by the Village in regulating nonconforming structures, the Village's interpretation of the ordinance cannot be deemed clearly erroneous, arbitrary or unreasonable.

■ The ordinance was designed to prevent any increase in the degree or expansion of the existing nonconformity of precode structures. The ordinance allows a property owner to expand the precode structure vertically, but prohibits any expansion which would further decrease the mandatory six-foot side yard requirement. As such, we find the Village's interpretation of the ordinance to be valid. Accordingly, the trial court was correct in finding the plaintiff's house, as altered and expanded, increased an already existing nonconformity.

Plaintiff also contends on appeal that the trial court erred in denying plaintiff's claim of estoppel. The trial court denied this claim on the basis of plaintiff's representation that a roof existed over the deck. Plaintiff asserts his representations concerning the existence of a roof were not material to the issue of estoppel. Such a claim is ab-

surd. The Village informed the plaintiff he could only build an enclosed, roofed structure where a roofed structure already stood. Plaintiff, in turn, represented to the Village that the deck had a roof, and the Village issued a building permit in reliance on this fact. Plaintiff cannot now claim the Village is estopped from enforcing the very requirement he misrepresented to the Village to be met. A person who has defrauded his adversary is barred from seeking equitable relief. *Fruhling v. County of Champaign* (1981), 95 Ill. App. 3d 409, 417.

■■ ■ The "clean hands" doctrine holds that one seeking equitable relief cannot take advantage of his own wrong or, as otherwise stated, he who comes into equity must come with clean hands. (*Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.* (1984), 128 Ill. App. 3d 763, 767-68.) The trial court found ample evidence that a roof had never existed above the deck. The plaintiff's own architect photographed the deck before construction began. Those photographs show no roof over the deck. The plaintiff's own videotape of the deck shows no roof existed. In addition, the court heard testimony from a number of individuals familiar with the deck, including the former owner of the house. All claim no roof ever existed over the deck. The evidence is sufficient to warrant a finding that the plaintiff misrepresented the fact that the deck had a roof over it before construction began. Accordingly, the plaintiff cannot now come before the court and ask to take advantage of his own wrong.

■■ The last issue before this court is whether the trial court erred in denying the Village's motion for sanctions and attorney fees under Supreme Court Rule 137. (134 Ill. 2d R. 137.) Rule 137 provides for the imposition of sanctions for pleadings not well grounded in fact. The standard for evaluating conduct is one of reasonableness under the circumstances existing at the time of filing. *Couri v. Korn* (1990), 202 Ill. App. 3d 848, 855.

In the present case, the Village claims the trial court erred in denying its motion for sanctions because the plaintiff filed this action for an improper purpose and at the very least plaintiff failed to make a reasonable inquiry into the facts before filing his complaint. However, the decision whether to award attorney fees and expenses rests within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Couri v. Korn*, 202 Ill. App. 3d at 855.

■■ While it is true the trial court found the facts to be ultimately adverse to the pleadings, that alone is not enough to warrant an award of attorney fees. (*Couri v. Korn*, 202 Ill. App. 3d at 855.) We find no abuse of discretion on the part of the trial judge in deny-

ing the Village's motion for sanctions. There is no evidence that the plaintiff's pleadings contained intentionally false allegations. The plaintiff testified consistently as to what he believed constituted a roof, *i.e.*, wooden slats with spaces between the slats. The trial court's denial of the Village's motion was within its sound discretion.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and GEIGER, JJ., concur.