DANIEL FILIPETTO, a Minor, by his Father and Next Friend, G. Filipetto, Plaintiff-Appellee, v. THE VILLAGE OF WILMETTE, Defendant-Appellant (Artley Paving Corporation *et al.*, Defendants).

First District (3rd Division)   No. 1—90—3480

Opinion filed September 15, 1993.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold and David T. Nani, of counsel), for appellant.

Barclay & Damisch, Ltd., of Chicago (Mark W. Damisch, Michael Svanascini, John W. Damisch, and Michael J. Kedzie, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Daniel Filipetto, a minor, brought an action to recover for injuries sustained when his bicycle ran into an unattended air compressor on the street. After a jury trial, a $389,761.62 verdict was rendered in favor of plaintiff with the percentage of negligence attributed to him being 20%. Of the remaining 80%, 55% was attributed to defendant Artley Paving Company (Artley), which subsequently settled its case with plaintiff, and 45% was attributed to defendant Village of Wilmette (the Village).

On appeal, the Village asserts that (1) plaintiff's claim failed to state a viable cause of action because the Village did not owe plaintiff a duty to enforce laws; (2) plaintiff's claim failed to state a cause of action because it was predicated on a duty to guard against plaintiff's own negligence; (3) a judgment notwithstanding the verdict is warranted because plaintiff's own evidence demonstrated that no act by the Village was a proximate cause of his accident; and (4) the judgment was based on erroneously admitted expert testimony. We affirm the jury's verdict.

At issue in this case is whether a municipality has a duty to safely maintain its streets that extends to persons using a public street even though that person sees road repair equipment located farther up the street.

Plaintiff, who was 16 years old at the time of the accident, testified that he was riding his bicycle to work at 10:15 a.m. on August 14, 1980. After turning into the far right lane of Wilmette Avenue, which is a four-lane road in a residential neighborhood, plaintiff saw an object about 450 feet ahead on the right side of the road. When plaintiff was about 50 feet from the object, which was the air compressor, he put his hands on the brakes because he planned to go around the compressor. Plaintiff did not see any cones, signs, or barricades near the compressor.

When plaintiff was about 10 feet from the compressor, he looked over his left shoulder to check for vehicles. There was an automobile about 25 feet behind him. Thinking he had room to go around the compressor, plaintiff moved into the left lane, but the automobile was closer than he realized. As the car swerved toward him, plaintiff realized that he and the car were going to collide. At that point, there were two to three feet between the car and the compressor. Plaintiff moved back to his right to avoid a collision with the automobile and struck the compressor's A-frame. He flew over the handlebars, striking his face on a nozzle protruding from the compressor.

In his complaint, plaintiff alleged that the Village breached its duty to maintain its roadway in a safe condition in that it allowed paving equipment (1) to be parked on the street longer than was necessary; (2) to disrupt and obstruct the flow of traffic; (3) to be on the street without barricades and lights; (4) to be on the street without warning signs; and (5) to be on the street without guidance signs to direct the flow of traffic.

There were no eyewitnesses to the accident, but a taxi cab driver, John Nierodzik, arrived at the scene about three minutes later. Nierodzik testified that he was driving westbound on Wilmette Avenue on the day of the accident. As he drove by the compressor, he saw plaintiff on the ground under the compressor with the bicycle on top of the compressor.

Nierodzik did not see any barricades next to the compressor, but did see one sawhorse on the curb. Nierodzik called for an ambulance. Plaintiff told Nierodzik that he was getting ready to go around the compressor when a car came up behind him, frightening him.

Arthur Levy, Artley's vice-president, testified extensively about barricades, cones, and channelization. According to Levy, Artley placed the air compressor at the site in preparation for street repair work being done for the Village. Levy explained that Artley worked pursuant to the Village's guidelines and specifications under the contract between Artley and the Village.

Levy described the compressor as five feet high, seven feet long, four feet wide, and extending almost five feet from the curb into the roadway with the front of the compressor facing plaintiff. An A-frame trailer hitch on which the compressor rested extended five feet nine inches in front of the compressor, parallel to the north curb.

Although Levy testified that he was not aware of the Illinois Manual for Uniform Traffic Control Devices for Streets and Highways, he admitted that it included the following standard that applied to the jobsite: "During working hours, all vehicles and/or non-operating

equipment which are parked for a short period, two hours or less, shall be parked at least eight feet from moving traffic." Manual for Uniform Traffic Control Devices for Streets and Highways §107.14 (eff. January 2, 1980) (hereinafter State Manual).

Earl Bondy, the Village's engineering field inspector, testified regarding his duties of enforcing construction safety rules. Raymond Heinz, Artley's foreman, testified that he placed the compressor at the scene of the accident about 15 to 20 minutes before the accident occurred. He had placed a sawhorse barricade in the street in front of the compressor but did not place any other cones or barricades at the site.

Dr. Roland Ruhl, a registered engineer, testified as plaintiff's expert witness. Dr. Ruhl read three Village ordinances: section 16—12.3, excavation construction requirements; section 16—19.6, deposits or storage on public ways, and section 13—8.15, which states:

"No persons shall stand or park any truck, tractor, semitrailer, trailer, bus or public passenger vehicle on any street for a longer period than is necessary for reasonably expeditious loading or unloading of such vehicles as such otherwise provided in this Chapter."

Section 11—301 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—301) states:

"The department shall adopt a State manual and specifications for a uniform system of traffic-control devices consistent with this Chapter for use upon highways within this State. The manual shall also specify insofar as practicable the minimum warrants justifying the use of the various traffic control devices."

Dr. Ruhl then described section 6—1.2 of chapter six of the State Manual as setting forth the basic principles and minimum standards for temporary traffic control needed during road construction and maintenance operations. It states:

"Single lane closure can be effectively accomplished with 'type one' or 'type two' barricades, provided they are placed in a manner affording a smooth and gradual taper. The first barricade should be placed on the shoulder and each succeeding one extending farther into the roadway at horizontal or vertical where site distances barricading are seen in advance of the curb." State Manual §6—1.2.

Dr. Ruhl identified section 6—2.3(a), which states:

"[I]f drivers are properly alerted to possible dangers in advance and adjust the control of their vehicles to meet these an-

ticipated hazards, they will be able to deal with whatever special conditions are present." State Manual §6—2.3(a).

Section 6—3.3(a) of the manual states:

> "*Cones and Drums.* Effective use can be made of cones or drums where the traffic restriction is of short duration and visibility is adequate." State Manual §6—3.3(a).

Dr. Ruhl testified about case U-2 found in the State Manual, which requires a taper to help traffic make a transition through the construction or maintenance zone. Channelization was defined as an orderly way to get traffic away from a construction or maintenance zone. Dr. Ruhl estimated the appropriate taper distance between each cone and stated that a minimum of six cones was required for the project in this case.

In Dr. Ruhl's opinion, even assuming the existence of a single barricade, defendants created an unreasonably dangerous situation that violated the minimum standards of the State Manual and the Village's ordinances. According to Dr. Ruhl, if cones had been present, neither plaintiff nor the oncoming car's driver would have been confronted with a last-second directional decision at a point where there was nothing that could be done to avoid injury. Dr. Ruhl stated that warning devices were required because of the need for channelization regardless of plaintiff's testimony that he was aware of the compressor's existence.

Although the Village did not call an expert witness, Artley did present Paul Box, who is a traffic engineering expert. Box testified that the three Village ordinances did not apply: (1) section 16—12.3 did not apply because no construction was being done; (2) there was no violation of section 16—19.6 because there was no material deposited in the public way; and (3) section 13—8.15 was not violated because the compressor was not parked, but placed, on the street in preparation for construction work. Box also disputed any need for channelization or cones in this situation.

The jury returned a verdict against both defendants for $389,761.62 and reduced that amount to $311,809.62 on a finding of plaintiff's 20% comparative negligence. It apportioned the damages at 45% for the Village and 55% for Artley.

Before considering the merits of the case, several procedural issues are raised. Plaintiff asserts that this court, in *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, already decided that the Village owed plaintiff a duty to maintain its roadway in a reasonably safe condition. In 1985, this court reversed the summary judgment in favor of the Village on the basis that material questions

of fact remained regarding whether the Village had sufficient notice of dangerous conditions on the roadway. There were no findings on a duty or the breach of a duty by the Village.

■ The issues regarding duty presented by the current appeal were not raised or determined in the prior appeal. Although questions of law actually determined in a previous appeal are binding, matters concerning the merits of a controversy that were not decided by a first appellate opinion do not become the law of the case. (*Huber v. Seaton* (1989), 186 Ill. App. 3d 503, 505, 542 N.E.2d 464.) Even issues presented but not decided in the prior appeal can be relitigated. *Callier v. Callier* (1986), 142 Ill. App. 3d 407, 414, 491 N.E.2d 505.

■ Next, plaintiff argues that the Village waived any argument regarding its failure to state a cause of action because it did not raise that issue in the initial appeal. Plaintiff's argument is groundless. Failure to state a cause of action can be raised at any time by any means and cannot be waived. (*Morrison v. Forest Preserve District* (1987), 155 Ill. App. 3d 687, 689, 508 N.E.2d 312; *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 453 N.E.2d 8.) Thus, the Village has not waived this issue.

As to the merits of the case, the Village makes several arguments. First, the Village asserts that the judgment entered was improper because it alleges that the Village failed to enforce or implement traffic control regulations on its roads. The Village denies that it has such a duty to plaintiff. To support its argument, the Village relies on a number of cases that are factually dissimilar because they involve injuries on private property, not public property. See *Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 583 N.E.2d 561; *Arizzi v. City of Chicago* (1990), 201 Ill. App. 3d 368, 559 N.E.2d 68; *Durham v. Forest Preserve District* (1986), 152 Ill. App. 3d 472, 504 N.E.2d 899; *Fryman v. J M K/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 484 N.E.2d 909; *Lakeside Condominium "C" Association v. Frediani Developers, Inc.* (1985), 135 Ill. App. 3d 972, 482 N.E.2d 665; *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917; *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26.

Plaintiff does not argue that in private property cases where the municipality has failed to enforce building codes or other similar ordinances, the courts have held that a municipality does not owe a duty to enforce its own ordinances on private property. Instead, plaintiff argues that where there is a defective or hazardous condition on a public roadway, a municipality does have a duty to persons using the roadway.

Next, the Village asserts that section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*) is inapplicable because it provides that the only duty to provide traffic controls is to warn of a dangerous condition that would not be apparent to a person in the exercise of due care. Contending that plaintiff was not exercising due care, as shown by his allegation of failure to provide channelization, the Village maintains that this is not a failure-to-warn case.

The Village expresses that a duty to warn is irrelevant and does not exist because plaintiff and the Village had equal knowledge of the danger involved. Maintaining that plaintiff was fully aware of the danger, the Village claims that the warning's function had already been fulfilled and no lack of warning could be the cause of any subsequent harm. To the extent that plaintiff's claim was based on a lack of barricades or signs to serve as a warning of the compressor's presence, the Village stresses that plaintiff's own evidence negated his claim. Thus, the Village concludes that plaintiff's case failed to state a cause of action.

Next, the Village asserts that the Tort Immunity Act's section 3—102, which provides that a municipality has the duty to safely maintain its streets, is inapplicable because the compressor parked on the street is not sufficient to show that anything was deficient in the maintenance of the street itself. Instead, the Village contends that the complaint is really about the lack of suitable traffic controls.

Closely related to its other arguments, the Village asserts that a judgment notwithstanding the verdict should be entered in its favor since the lack of a warning or other traffic devices could not legally have been the proximate cause of this incident.

In response, plaintiff asserts that his claim is not based on the Village's failure to enforce its ordinances, but on the Tort Immunity Act, which provides that the Village breached its duty to keep its property in a reasonably safe condition.

Plaintiff maintains that the real issue is whether the accident was foreseeable. Plaintiff argues that the accident was foreseeable because (1) the Village ordinances existed to prevent injuries to parties such as plaintiff who were legally on the highway; (2) the Village violated the Illinois statutes as implemented in the State Manual; and (3) when road construction is being performed, it is necessary to properly guide traffic around the construction in order to prevent serious accidents.

Next, plaintiff argues that he was not adequately apprised of the unreasonably dangerous condition even though he saw the compressor

before the impact. The Village ignored all the relevant statutes and ordinances and its contract with Artley when it provided no protection for plaintiff. If the proper barricades and warnings were in place, plaintiff argues that the traffic would have been properly channeled so that the street traffic would not be forced into last-second decision making.

Plaintiff concludes that the jury's verdict, which was that the failure to place proper warnings and barricades was the proximate cause of the accident, was not against the manifest weight of the evidence. We agree.

In a negligence case, the plaintiff must establish existence of a duty, a breach of that duty, and an injury proximately resulting from that breach of duty. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 45, 566 N.E.2d 1365.) Whether the village owed plaintiff a duty of care is a question of law.

Section 3—102(a) of the Tort Immunity Act sets forth the Village's duty to maintain its property:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).)

Section 3—102(a) codifies the common law duty of a local public entity to maintain its property, including the duty to maintain public highways within its boundaries in a reasonably safe condition. *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 643, 577 N.E.2d 779.

Installation of traffic control devices is an integral part of the municipality's common law duty to maintain its public highways in a reasonably safe condition. (*Parsons*, 217 Ill. App. 3d at 645.) The construction and placement of traffic control devices are statutorily controlled by specifications stated in the State Manual. *Parsons*, 217 Ill. App. 3d at 645.

The duty that is applicable to this case is the duty to keep the roads free from obstacles that create an unreasonable risk of harm. (*Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 294, 393 N.E.2d 725.) Although a municipality is not an insurer against all accidents occurring on the public way, it has a duty to maintain its streets in a reasonably safe condition for the amount and kind of traffic that may be fairly expected on them. (*Warchol*, 75 Ill. App. 3d at

294.) This duty is extended to keeping public ways free of obstacles that create an unreasonable risk of harm. (*Warchol,* 75 Ill. App. 3d at 294.) It is also extended to any adjacent part or portion of the public way. *Predny v. Village of Park Forest* (1987), 164 Ill. App. 3d 688, 697, 518 N.E.2d 1243.

Further duties are outlined under section 3—104(b) of the Tort Immunity Act, which was amended in 1986. This case is governed by the pre-1986 section 3—104(b), which provided as follows:

"(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.

(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." Ill. Rev. Stat. 1979, ch. 85, par. 3—104.

Thus, under subsection (b), it was possible to hold a municipality liable for the failure to provide a traffic warning sign or device if it was necessary to warn of a condition that endangered the traffic's safe movement. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104.) When the legislature amended section 3—104 in 1986, it deleted subsection (b) in its entirety and enlarged the scope of a municipality's immunity if it failed to provide traffic devices. *West,* 147 Ill. 2d at 8.

■ We hold that the Village had a duty under section 3—102(a) and section 3—104(b) to provide traffic warning signals, signs, markings or other devices to warn of a condition which endangered the safe movement of traffic when the compressor equipment was placed on the roadway. The road repair equipment constituted an obstacle on a public way that created an unreasonable risk of harm to vehicles and bicycles. This duty arose before traffic approached the compressor and this duty remained even after it was observed by approaching traffic. The Village knew or should have known that at some point in time traffic in the same lane as the compressor would have to merge into the second lane from the curb in order to avoid colliding with the compressor. It was foreseeable that a compressor on the roadway would create a problem for vehicles to maneuver around it.

A municipality's violation of an ordinance or statute designed for the protection of human life is *prima facie* evidence of negligence. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) The injured party has a cause of action provided that he is in the class of persons the statute was designed to protect and the violation was a direct and proximate cause of the injury. *First National Bank*, 71 Ill. 2d at 9.

We find that the Village breached its duty to maintain its property in a reasonably safe condition. The Village entered into a contract with Artley, who repaired the Village's streets. Earl Bondy, a Village inspector, was the field inspector responsible for construction safety rules. In the two-week period prior to the accident, Bondy saw Artley's compressor on the roadway every day while awaiting the crew's arrival. Bondy did not recall what, if any, signs or barricades existed when he saw the compressor during the two weeks before the accident.

When Bondy arrived at the scene on the day of the accident, he saw no orange cones near the compressor, but he did see a four-legged A-frame barricade about three feet southeast of the compressor. There was no device to direct the traffic flow around the compressor. Although the Village had two-foot-high orange traffic cones available, Bondy did not instruct Artley to place signs or barricades at the jobsite nor did he ever place signs or barricades himself.

Raymond Heinz, Artley's foreman and superintendent, testified that Bondy usually inspected Artley's work every day. On the morning of the accident, Heinz had towed the compressor to the site of the accident around 10 a.m. Although he had discussed with Bondy the placement of barricades on the roadway for the general public's safety, he placed only one sawhorse barricade on the street in front of the compressor. No signs or warnings were placed directing vehicles or bicycles around the construction equipment. Heinz then left the compressor at the site and went to another location.

In addition, the Village's breach of its duty to plaintiff was a direct and proximate cause of plaintiff's injury. Proximate cause is that cause which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. *Parsons*, 217 Ill. App. 3d at 647.

The defendant, Village of Wilmette, relies on the case of *McCoy v. McCoy* (1992), 227 Ill. App. 3d 244, 591 N.E.2d 124, as support for the absence of any causal connection between the alleged statutory violations by the Village and the plaintiff's injuries. In the *McCoy* case the defendant drove a tractor which pulled a wagon and all of its pas-

sengers on a hayride over country roads in violation of a motor vehicle statute which prohibited operating a farm tractor on a highway unless it was being used in connection with farming operations. The plaintiff fell off the wagon while attempting to walk from the tractor to the wagon. There was no evidence that defendant's driving caused the fall, nor was there any evidence of any potholes or bumps on the highway. The court affirmed summary judgment in favor of the defendant driver, finding that there was no causal connection between the violation of the statute and plaintiff's injuries. In this case, however, the violations of the statutes permitting a dangerous condition to exist on the roadway did contribute to proximately cause plaintiff's injuries.

Proximate cause and its element of foreseeability are matters to be determined by the jury. (*Castorena v. Browning-Ferris Industries* (1991), 217 Ill. App. 3d 328, 335, 577 N.E.2d 185.) A jury's determination that defendant's conduct was the proximate cause of the injury will be reversed only if it is against the manifest weight of the evidence. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 905, 568 N.E.2d 463.) A verdict is against the manifest weight of the evidence only where, upon review of all the evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent, the jury's findings are palpably erroneous and wholly unwarranted, the jury's findings are clearly the result of passion or prejudice, or the jury's findings appear to be arbitrary or unsubstantiated by the evidence. (*Rainey*, 209 Ill. App. 3d at 905.) We find that the jury's verdict in this case was not against the manifest weight of the evidence.

■ Finally, the Village asserts that the judgment is improper because it is based on erroneously admitted expert testimony. The Village claims that all of Mr. Ruhl's testimony was speculative and irrelevant because it concerned the Village ordinances and Illinois Vehicle Code, which could not provide the basis for any legally recognized cause of action against the Village.

There is no merit to the Village's assertion concerning Dr. Ruhl's testimony. He testified as an expert and gave his expert opinion regarding the proximate cause of the accident.

Based on the foregoing, the circuit court judgment is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.