# Illinois Official Reports

## Appellate Court

---

***Fox Valley Families Against Planned Parenthood v. Planned Parenthood of Illinois*,
2018 IL App (2d) 170137**

---

| | |
|---|---|
| Appellate Court Caption | FOX VALLEY FAMILIES AGAINST PLANNED PARENTHOOD, SOCORRO NIETO, and CHARLES AMANING, Plaintiffs-Appellants, v. PLANNED PARENTHOOD OF ILLINOIS, as Successor in Interest to Planned Parenthood/Chicago, GEMINI OFFICE DEVELOPMENT, LLC, and 21ST CENTURY OFFICE DEVELOPMENT, LLC, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-0137 |
| Filed | March 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-MR-261; the Hon. Paul M. Fullerton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Peter Breen, of Thomas More Society, of Chicago, for appellants.<br><br>Christopher B. Wilson and Caitlin M. Foley, of Perkins Coie LLP, of Chicago, for appellees. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Gemini Office Development, LLC (Gemini), owns the property located at 3051 East New York Street in Aurora, Illinois. The tenant of that property, defendant Planned Parenthood of Illinois, operates a facility where it provides abortions and other healthcare services. Planned Parenthood of Illinois is the sole and controlling member and owner of defendant 21st Century Office Development, LLC, which, in turn, is the sole and controlling member and owner of Gemini. Plaintiffs—Fox Valley Families Against Planned Parenthood, Socorro Nieto, and Charles Amaning—filed the instant action to challenge defendants' use of the property. Specifically, plaintiffs alleged in their fourth amended complaint that such use constitutes an ongoing violation of the Aurora Zoning Ordinance (Aurora Code of Ordinances, Appendix A, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015)). The trial court dismissed the action pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). Plaintiffs appeal. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND
¶ 3        This is the second time that this case has been before us. In *Fox Valley Families Against Planned Parenthood v. Planned Parenthood of Illinois*, 2015 IL App (2d) 131019-U (*Fox Valley Families I*), we remanded the matter for further proceedings on the issue of whether defendants' ongoing use of the subject property violates the zoning ordinance. We made it clear that we expressed no opinion on the merits of that particular issue. *Fox Valley Families I*, 2015 IL App (2d) 131019-U, ¶ 107 ("We emphasize that we express no opinion on the merits of plaintiffs' claim that Planned Parenthood's ongoing use of the property violates the [zoning ordinance], even though plaintiffs maintain that this court should make that determination. Given the procedural posture of this case, it would be premature for this court to do so.").

¶ 4        On remand, plaintiffs filed a fourth amended complaint seeking a declaratory judgment and an injunction pursuant to section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2016)). That statute provides a mechanism for property owners to seek redress for ordinance violations on neighboring properties.

¶ 5        The parties agree that the subject property is located in Aurora's Business-Boulevard District (B-B District). They disagree as to whether the present use of the property is permitted in that district. According to defendants, the Planned Parenthood facility is indeed a permitted use, because it falls under the category of "Offices, business and professional, including medical clinics." See Aurora Code of Ordinances, Appendix A, § 8.6-4.1(LLL), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Plaintiffs, on the other hand, maintain that the use of the property more accurately comes under the umbrella of "Social Service Agencies, Charitable Organizations, Health Related Facilities, and similar uses when

not operated for pecuniary profit." See Aurora Code of Ordinances, Appendix A, § 20, Table One, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Plaintiffs submit that this so-called "nonprofit use category" or "not-for-profit use category" is prohibited in the B-B District.

¶ 6 The parties outlined their respective interpretations of the zoning ordinance in the context of briefing defendants' motion to dismiss the fourth amended complaint pursuant to section 2-615 of the Code. The trial court granted that motion, concluding that plaintiffs failed to allege an ongoing violation of the zoning ordinance. Plaintiffs timely appealed.

¶ 7                                                    II. ANALYSIS

¶ 8 Plaintiffs preliminarily contend that the law-of-the-case doctrine bars defendants' arguments. Plaintiffs also submit that it was improper for the trial court to dismiss the fourth amended complaint because we determined in the prior appeal that it would be premature for us to address the merits of their claim and "the case was in effectively the same posture" on remand. Plaintiffs further assert that defendants forfeited their statutory-interpretation argument by failing to raise it in the first appeal.

¶ 9 "[T]he law-of-the-case doctrine generally bars relitigation of an issue previously decided in the same case." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31. When an appellate court decides a question of law, that decision ordinarily binds both the trial court on remand and the appellate court in a subsequent appeal. *Madigan*, 2012 IL App (2d) 100024, ¶ 31. But "matters concerning the merits of a controversy that were not decided by a first appellate opinion do not become the law of the case." *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461, 466 (1993). That is true even if such issues were "presented but not decided in the prior appeal." *Filipetto*, 254 Ill. App. 3d at 466.

¶ 10 The law-of-the-case doctrine does not bar defendants' arguments. In *Fox Valley Families I*, we recounted that the trial court had granted summary judgment in defendants' favor on plaintiffs' "ongoing use" claim, based on its erroneous finding that "a legislative decision had been made approving of Planned Parenthood's use of the property and that plaintiffs could not establish that the decision was arbitrary and capricious." *Fox Valley Families I*, 2015 IL App (2d) 131019-U, ¶ 97. We held that defendants "were not entitled to judgment as a matter of law on [the ongoing-use] claim on the basis that the city made a legislative decision approving of Planned Parenthood's use." *Fox Valley Families I*, 2015 IL App (2d) 131019-U, ¶ 107. However, we expressly declined to comment on the merits of plaintiffs' theory that the ongoing use of the subject property violates the zoning ordinance. *Fox Valley Families I*, 2015 IL App (2d) 131019-U, ¶ 107. Plaintiffs' suggestion that we nevertheless made certain "preliminary finding[s]" on that issue is simply wrong.

¶ 11 For similar reasons, we decline to hold that defendants have waived, forfeited, or otherwise defaulted their arguments. Throughout much of the history of this case, defendants' position with respect to plaintiffs' claim of an ongoing ordinance violation was colored by an erroneous assumption that the City of Aurora had made a legislative decision approving of defendants' particular use of the property. In *Fox Valley Families I*, we certainly contemplated that the parties would have a chance on remand to present their respective interpretations of the zoning ordinance without the effect of that erroneous assumption. Contrary to what plaintiffs propose, the case was not in the same procedural posture on remand as it had been on appeal.

¶ 12 The trial court dismissed plaintiffs' fourth amended complaint pursuant to section 2-615 of the Code. "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." *Bueker v. Madison County*, 2016 IL 120024, ¶ 7. In reviewing the trial court's ruling, we accept as true the well-pleaded facts in the complaint as well as the reasonable inferences that can be drawn from such facts. *Bueker*, 2016 IL 120024, ¶ 7. "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 5. Dismissal of a complaint is appropriate only where it is clearly apparent that the plaintiff can prove no set of facts that would entitle him or her to recovery. *Ferris*, 2017 IL 121297, ¶ 5. Our review is *de novo*. *Ferris*, 2017 IL 121297, ¶ 5.

¶ 13 The parties present competing interpretations of the zoning ordinance. We construe municipal ordinances in the same manner as statutes. *In re Application of the County Collector*, 132 Ill. 2d 64, 72 (1989). Our primary objective is to ascertain and effectuate the legislative body's intent. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 67. "Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance." *Monahan v. Village of Hinsdale*, 210 Ill. App. 3d 985, 993 (1991).

¶ 14 The zoning ordinance divides Aurora into 23 zoning districts. See Aurora Code of Ordinances, Appendix A, § 4.1, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). The parties agree that the subject property is part of the B-B District. Section 8.6 of the zoning ordinance governs the use of property in that district. Aurora Code of Ordinances, Appendix A, § 8.6, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Specifically, section 8.6-4.1 identifies 99 categories of permitted uses, one of which is "Offices, business and professional, including medical clinics." Aurora Code of Ordinances, Appendix A, § 8.6-4.1(LLL), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Section 8.6-4.2 then lists certain uses that are allowed in the B-B District with a special-use permit. Aurora Code of Ordinances, Appendix A, § 8.6-4.2, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Section 8.6-4.4 provides that all uses that are not "expressly permitted" in the B-B District are "expressly prohibited." Aurora Code of Ordinances, Appendix A, § 8.6-4.4, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015).

¶ 15 Defendants contend that their use of the subject property is permitted under the provision that allows "Offices, business and professional, including medical clinics."

¶ 16 In their fourth amended complaint, plaintiffs alleged that defendants' use of the property implicates a "more restrictive" zoning classification. According to plaintiffs, the property is also being used for political lobbying, voter education, and other community-organizing and educational activities. In plaintiffs' view, the facility is thus "far more than any mere 'medical office building.' " Plaintiffs alleged that defendants' use of the property most accurately falls under a category that, under plaintiffs' interpretation of the zoning ordinance, is banned in the B-B District: "Social Service Agencies, Charitable Organizations, Health Related Facilities, and similar uses when not operated for pecuniary profit." Aurora Code of Ordinances, Appendix A, § 20, Table One, as amended by Ordinance No. O15-062

(approved Oct. 13, 2015). Plaintiffs repeatedly referred to that particular use as the "nonprofit use category." (On appeal, they call it the "not-for-profit use category.")

¶ 17 Plaintiffs alleged that, when defendants applied for the necessary permits in July 2006, "the nonprofit land use could be permitted on the subject property pursuant to section 8.6-4.2 of the [zoning ordinance], but only pursuant to a special use permit issued by the City Council, after notice and a public hearing." (It is undisputed that defendants never sought a special-use permit.) According to plaintiffs, before defendants received their permits, the city council amended the zoning ordinance in December 2006 to, in plaintiffs' words, "ban entirely any nonprofit land use from the subject property." Therefore, plaintiffs concluded, defendants' use of the property is an ongoing prohibited use under the zoning ordinance.

¶ 18 The trial court rejected plaintiffs' interpretation of the zoning ordinance, as do we. Plaintiffs' proffered distinction between for-profit uses of property in the B-B District (which plaintiffs contend are permissible) and nonprofit uses (which plaintiffs contend are impermissible) is not supported by the plain language of the zoning ordinance.

¶ 19 As noted, one of the permitted uses of property in the B-B District is "Offices, business and professional, including medical clinics." Aurora Code of Ordinances, Appendix A, § 8.6-4.1(LLL), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). The plain language of that provision does not limit such uses to for-profit enterprises. Furthermore, the zoning ordinance defines[1] the term "Clinic, Medical or Dental" as follows:

> "A building containing an individual practitioner or an association or group of licensed physicians[,] surgeons, dentists, clinical psychologists, or similar professional health care practitioners, including assistants. The clinic may include apothecary, dental and medical laboratories, and/or X-ray facilities, but shall not include in-patient care or operating rooms for major surgery." Aurora Code of Ordinances, Appendix A, § 3.3, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015).

The zoning ordinance similarly defines the term "Clinic or Medical Center" as follows:

> "A 'medical center' or 'medical clinic' is an establishment where three (3) or more licensed physicians, surgeons or dentists engage in the practice of medicine or dentistry, operating on a group or individual basis with pooled facilities, which need not, but may, include coordinated laboratory, X-ray and allied departments, and the diagnosis and treatment of humans, a drug prescription counter (not a drugstore) for the dispensing of drugs and pharmaceutical products, orthopedic or optical devices to the patients of said physicians, surgeons, and dentists; but not including any exterior display or advertising sign." Aurora Code of Ordinances, Appendix A, § 3.3, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015).

Neither of those definitions distinguishes between for-profit and nonprofit uses.

¶ 20 If the City of Aurora intended to require medical clinics in the B-B District to operate as for-profit enterprises, it certainly knew how to make such intent explicit. For example, section 8.6-4.2(B)(ii)(a) of the zoning ordinance allows the following uses in the B-B

---

[1]Section 8.6-3.2(A) incorporates the definitions "[a]s provided for in the Rules and Definitions Section." Aurora Code of Ordinances, Appendix A, § 8.6-3.2(A), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015).

District, with a special-use permit: "Amusement and recreational uses including archery range, golf practicing range, miniature golf course, swimming pools, swim clubs, roller skating rinks, dance halls, tennis courts, tennis buildings, bowling alleys or other similar places of entertainment *when operated for profit*." (Emphasis added.) Aurora Code of Ordinances, Appendix A, § 8.6-4.2(B)(ii)(a), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). In contrast to section 8.6-4.2(B)(ii)(a), section 8.6-4.1(LLL) permits medical clinics in the B-B District without expressly limiting such use to for-profit businesses. Plaintiffs nevertheless effectively ask us to read that restriction into section 8.6-4.1(LLL). We are not free to do so. See *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 52 ("It is never proper for a court to depart from the plain language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent."); *Gutraj v. Board of Trustees of the Police Pension Fund*, 2013 IL App (2d) 121163, ¶ 14 (" '[W]e should normally assume that whenever the legislature intended a limitation, it expressed that limitation; conversely, if the limitation is absent from the text, the legislature presumably did not intend the limitation.' " (quoting *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 660 (2005))).

¶ 21         Plaintiffs emphasize that section 8.6-2.1 of the zoning ordinance provides:

> "The intent of the B-B business boulevard district is to combine residential, commercial, office and industrial development in an orderly arrangement along a major street so as to *maximize the commercial service benefit it offers* and to minimize its harmful affects [*sic*] on (1) traffic movement and flow; (2) traffic safety; (3) the various land uses within and in close proximity to the B-B district; and (4) the beauty of the community." (Emphasis added.) Aurora Code of Ordinances, Appendix A, § 8.6-2.1, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015).

In plaintiffs' view, "[p]ermitting not-for-profit uses in the B-B Business Boulevard District directly conflicts with that stated intent." Plaintiffs seem to imply that nonprofit uses inherently provide less of a commercial-service benefit than for-profit uses. To the extent that this is what plaintiffs mean to suggest, they fail to develop a cogent argument in support of that proposition. Moreover, providing medical care might reasonably be considered a valuable commercial-service benefit in and of itself. It is also not difficult to imagine that a medical clinic, though operated not-for-profit, could provide a substantial commercial-service benefit simply by drawing large numbers of people into the district. Plaintiffs' argument regarding commercial-service benefits is unpersuasive for the additional reason that some of the permitted property uses listed in section 8.6-4.1 of the zoning ordinance would seem to apply only to nonprofit or governmental entities. For example, religious institutions, libraries, post offices and postal substations, public-utility collection offices, and reading rooms are all permitted uses in the B-B District. See Aurora Code of Ordinances, Appendix A, § 8.6-4.1(W), (DDD), (VVV), (WWW), (YYY), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). So are clubs and fraternal organizations (Aurora Code of Ordinances, Appendix A, § 8.6-4.1(X), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015)), which are nonprofit entities by definition. See Aurora Code of Ordinances, Appendix A, § 3.3, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015) (defining "Club or Lodge, Private" as "[a] structure or part thereof used by a

*not-for-profit association of persons* who are bona fide members paying dues and where facilities are restricted to members and their guests" (emphasis added)).

¶ 22 Furthermore, plaintiffs' contentions about a so-called "nonprofit use category" or "not-for-profit use category" are rooted in a version of the zoning ordinance that has not been in effect for more than a decade. Prior to December 2006, the zoning ordinance contained a section 4.3-1.1(FFF), describing special uses, which provided as follows:

> "The city council of the City of Aurora shall have the authority to permit by ordinance the following uses of land or structures or both, subject to the conditions contained in the Administrative Section.

> * * *

> FFF. Social Service agencies, charitable organizations, health-related facilities, meeting halls and similar uses when not operated for pecuniary profit in any use district." Aurora Code of Ordinances, Appendix A, § 4.3-1.1(FFF), as amended by Ordinance No. O06-64 (approved July 25, 2006).

¶ 23 The only portion of the current version of the zoning ordinance that contains language similar to that formerly included in section 4.3-1.1(FFF) is now section 20, Table One. See Aurora Code of Ordinances, Appendix A, § 20, Table One, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). As noted above, the zoning ordinance creates 23 zoning districts. The respective sections of the zoning ordinance governing 17 of those districts specifically incorporate Table One.[2] Table One, in turn, contains a chart listing a number of use categories. That chart indicates whether and under what circumstances the myriad uses are allowed in those 17 districts. Of relevance to this appeal, one use category listed in Table One is "Social Service Agencies, Charitable Organizations, Health Related Facilities, and similar uses when not operated for pecuniary profit." According to Table One, a use under that category is a special use in 16 of the 17 specified districts but is not a permitted use in the "P" Park and Recreation District. Importantly, section 8.6 of the zoning ordinance, which relates to the B-B District, does not specifically incorporate Table One. Nor does Table One mention the B-B District. Instead, section 8.6-4.1 contains an extensive list of uses permitted in the B-B District, and section 8.6-4.2 identifies the applicable special uses. We also note that Table One makes no mention of medical clinics, which are expressly permitted in the B-B District pursuant to section 8.6-4.1(LLL).

¶ 24 Plaintiffs are correct that section 8.6-4.4 of the zoning ordinance indicates that all uses that are not expressly permitted in the B-B District are prohibited. They are also correct that the zoning ordinance does not designate "Social Service Agencies, Charitable Organizations, Health Related Facilities, and similar uses when not operated for pecuniary profit" as either a permitted or a special use in the B-B District. Plaintiffs extrapolate that such use must therefore be prohibited in the B-B District. The fault in plaintiffs' logic, however, is that the language regarding "Health Related Facilities, *** and similar uses when not operated for

---

[2]The "R-1" One-Family Dwelling District, governed by section 7.5 of the zoning ordinance, is one such example. See Aurora Code of Ordinances, Appendix A, § 7.5-4.1, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015) ("The Permitted Uses for this district as identified in *Table One: Use Categories shall apply*." (emphasis in original)); Aurora Code of Ordinances, Appendix A, § 7.5-4.2, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015) ("The Special Uses for this district as identified in *Table One: Use Categories shall apply*." (emphasis in original)).

pecuniary profit" now comes from Table One, which neither mentions the B-B District nor is incorporated by reference in the substantive provisions regulating that district.

¶ 25 If the City of Aurora intended to restrict or prohibit nonprofit health-related facilities in the B-B District, it certainly knew how to do so. As previously noted, in section 8.6-4.2(B)(ii)(a), the zoning ordinance explicitly states that certain amusement and recreational uses, "when operated for profit," are allowed in the B-B District upon the issuance of a special-use permit. Aurora Code of Ordinances, Appendix A, § 8.6-4.2(B)(ii)(a), as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). Additionally, the zoning ordinance is clear that "Social Service Agencies, Charitable Organizations, Health Related Facilities, and similar uses when not operated for pecuniary profit" are prohibited in the "P" Park and Recreation District. See Aurora Code of Ordinances, Appendix A, § 20, Table One, as amended by Ordinance No. O15-062 (approved Oct. 13, 2015). In contrast, as explained above, medical clinics are designated as permitted uses in the B-B District, and there is no discernible intent to distinguish between for-profit and nonprofit uses of such facilities.

¶ 26 We hold that plaintiffs' theory of an ongoing ordinance violation as alleged in their fourth amended complaint fails as a matter of law. Accordingly, the trial court properly granted defendants' motion to dismiss the complaint, with prejudice, for failure to state a cause of action.

¶ 27 III. CONCLUSION

¶ 28 For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 29 Affirmed.